S. H. ATWOOD ET AL. v. W. J. MARSHALL ET AL.

FILED JUNE 16, 1897. No. 7396.

1. **Instructions:** ASSIGNMENTS OF ERROR. Where alleged errors in regard to the giving or refusal to give a series of consecutively numbered instructions are assigned in gross in the motion for a new trial, the assignments will on review be examined no further when it is ascertained that the action of the trial court was proper as to one instruction of either group.

2. **Motion for New Trial:** REVIEW. A motion for a new trial is indivisible, and if jointly made by two or more of the parties to a suit, and an assignment of error therein cannot be sustained as to all, it must be overruled.

3. **Mortgages:** PRESUMPTION OF ACCEPTANCE: EVIDENCE. If a mortgage beneficial to the grantee therein is voluntarily executed and placed of record by the grantor, the grantee's acceptance thereof will be presumed, but such presumption may be rebutted by proof that the mortgagee never accepted the instrument; but if no such proof is made the presumption must prevail.

4. **Cross-Examination of Witnesses.** In this state the strict rule of cross-examination has been approved. "The cross-examination of a witness should be restricted to the facts and circumstances drawn out on his direct examination. If it is desired to examine the witness upon other matters the party desiring such examination must make the witness his own and call him as such. *Davis v. Neligh,* 7 Neb., 84, adhered to." (*Boggs v. Thompson,* 13 Neb., 403.)

5. ———: LIMITATION: REVIEW. In cases where the issue is of fraud in the matters involved, a wide latitude will generally be allowed

to the cross-examination of witnesses, especially if they were parties to the transactions in question, but the extent of the cross-examination in such a case is subject to limitation within the sound discretion of the trial judge, and unless an abuse of such discretion to the prejudice of a complaining party appears, the restriction of the cross-examination will not furnish sufficient cause for the reversal of a judgment.

6. Trial: 'REJECTION OF TESTIMONY: HARMLESS ERROR. Alleged error in the rejection of testimony cannot avail if the same, or substantially the same, testimony had been, or was afterwards, allowed to be obtained from the witness. (*Union P. R. Co. v. Evans,* 52 Neb., 50.)

7. ———: ———: REVIEW. Certain testimony which had a bearing on the question of the value of property, the alleged conversion of which was in litigation, was offered and excluded. The question of value of the property was one as to which the testimony was conflicting and variant. The testimony *held* material and its exclusion prejudicial error.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Reversed.*

*J. B. Strode, R. D. Stearns,* and *E. C. Strode,* for plaintiffs in error.

*Charles O. Whedon, contra.*

HARRISON, J.

In the petition in this case it was alleged that on September 10, 1888, "Charles C. Bullock and W. E. Keys, doing business at Lincoln, Nebraska, under the firm name of Keys & Bullock, were indebted" to certain named parties in various stated sums evidenced as to each indebtedness by a promissory note or notes; "that to secure such indebtedness said Keys & Bullock did, on the 10th day of September, 1888, make, execute, and deliver to the parties" creditors a chattel mortgage upon and covering, with other property, certain enumerated articles of personal property, including a stone crusher or breaker, all of the property of the value of $6,000; that the mortgage was filed in the proper office in Lancaster county on the same day, and "that on or about the 6th day of

April, 1891, the defendants, by themselves and their agents, without the knowledge or consent of the plaintiffs, and without regard to their rights, took said property aforesaid and herein described and converted the same to their own use and tore down said breaker and removed all of said property from the place where it was located, loaded it upon the cars, and removed it out of said Lancaster county, and deprived the plaintiffs of the same and of their said security and property to the damage of the plaintiffs in the sum of $10,000." Samuel H. Atwood, of defendants in the district court, now of plaintiffs in error, answered that he became the owner of the property described in the petition by virtue of purchase, at a sale of it, by the sheriff of Lancaster county, made under and pursuant to a levy of an execution issued for the enforcement of a judgment in favor of Murphy, Patterson & Co., and against the firm of Keys & Bullock, and levied on the property as that of said firm, and that it then belonged to said firm; and for further answer denied each and every allegation of the petition to which there had been in the answer no admission. The firm of Murphy, Patterson & Co. answered, stating the obtaining and existence of a judgment in its favor against Keys & Bullock, the issuance and levy of an execution for its enforcement and the sale of the property levied upon (that described in the petition) by the sheriff to Atwood, and pleaded by allegations of facts the fraudulent character of the mortgage executed by Keys & Bullock to defendants in error. The parties mortgagees secured a verdict and judgment in the trial court, and the unsuccessful parties have prosecuted error proceedings to this court.

It is one of the assignments of error argued in the brief that certain paragraphs of the charge of the court to the jury were objectionable and prejudicial; also, that it was an error to refuse to instruct the jury as requested by counsel for plaintiffs in error. With reference to each of these alleged errors, the assignment in the motion for a new trial was of a group of consecutively numbered series

of propositions. There were some of each in regard to which the action of the trial court was not erroneous. This being determined, according to an established rule, the assignment will not be further examined and will be overruled. (*Denise v. City of Omaha*, 49 Neb., 750.)

It is claimed that there was a fatal variance between the pleading on the part of the defendants in error and the proof in this: In the petition it was stated that Charles G. Bullock and W. E. Keys, doing business under the firm name of Keys & Bullock, executed the mortgage on which reliance was placed by defendants in error as establishing their ownership to the property to recover for the conversion of which this action was instituted; and that the mortgage herein introduced was executed by a firm composed of W. E. Keys, C. G. Bullock, and J. H. Bullock, and not the firm made up of two individual members as pleaded in the petition. It may be stated that this constituted a variance as claimed; but if so it could not affect the rights of Murphy, Patterson & Co., since in its answer it admitted the mortgage to defendants in error, which as to its rights rendered proof of the mortgage or of its introduction in evidence unnecessary; hence this portion of the record is without significance when received in connection with the rights of Murphy, Patterson & Co. in the suit, and the argument based thereon must be overruled; and this is effective in relation to all the plaintiffs in error, for they joined in the motion for a new trial, also in the petition in error; and the assignment having been proved without force as to one, is so as to all. (*Scott v. Chope*, 33 Neb., 41.)

It is urged that delivery of a mortgage and its acceptance by the mortgagee are necessary to constitute it valid as against the rights of attachment or execution creditors, where levies of the writs are made on the property, and that such acceptance must have occurred prior to levies; and further, that, prior to the levy of the execution in favor of Murphy, Patterson & Co. on the property, there had been no acceptance by the parties of the

instrument by the parties named in it as mortgagees of the mortgage on which the claim of defendants in error was predicated. On this subject it was stated in a decision of this court in the case of *Rogers v. Heads Iron Foundry*, 51 Neb., 39 (the instruments referred to in the opinion were chattel mortgages): "This court has held that where a deed beneficial to the grantee is voluntarily executed and placed upon record by the grantor, the acceptance of the grantee will be presumed. (*Bowman v. Griffith*, 35 Neb., 361; *Issitt v. Dewey*, 47 Neb., 196.) And, upon principle, the delivery of a mortgage by the mortgagor, or by his direction, as in the case at bar, for record, is sufficient, in the absence of proof to the contrary, to justify a finding of its delivery by the mortgagor and acceptance by the mortgagee. But the presumption of delivery and acceptance is not a conclusive one, but is *prima facie* alone. It may be shown, if such be the fact, that the mortgagee never accepted the instrument, but rejected the same when apprised of its existence." The mortgage given to defendants in error was placed on file and passed from the control of the maker. All this appeared in evidence. It might have been shown, if such was the fact, that the designated mortgagees never accepted it; but this was not done and the presumption of acceptance must prevail.

On cross-examination of C. G. Bullock, a witness called to the stand on the part of defendants in error, he was interrogated in regard to the employment of counsel who appeared for defendants in error, and whether he (the witness) did not employ said attorney to appear and act in the case. These questions were objected to on the grounds of not being proper cross-examination and immaterial. It is argued that the plaintiffs in error should have been allowed to cross-examine this witness on the proposed subject, he being a member of the firm which gave the chattel mortgage and the main issue being the character of said instrument, whether fraudulent or *bona fide*. The witness, during his evidence in chief, had iden-

16

tified the mortgage as the one signed by himself for the firm of Keys & Bullock, of which he was a member; had stated who composed the firm when the mortgage was made; had also made a statement in detail in regard to the sums, the payments of which were secured by the instrument, giving the name of each party (there was quite a long list of them), the amount of the indebtedness to each, what the indebtedness was for, etc., and that the chattel mortgage was given to secure the creditors the payments of their claims. In regard to cross-examination the strict, or as it is sometimes called, the "American rule," as distinguished from what is denominated by some authors the "English rule," prevails in this state, and has been thus stated: "The cross-examination of a witness should be restricted to the facts and circumstances drawn out on his direct examination. If it is desired to examine the witness upon other matters, the party desiring such examination must make the witness his own and call him as such." *Davis v. Neligh*, 7 Neb., 84, adhered to. (*Boggs v. Thompson*, 13 Neb., 403.) But where an alleged fraudulent transaction is the subject of inquiry, it has been said in regard to the rule: "A wide latitude will generally be allowed in the cross-examination of witnesses when the issue is fraud, especially of witnesses who are parties to the alleged fraudulent transaction." (*Altschuler v. Coburn*, 38 Neb., 881.) Also: "While great latitude must of necessity be given in the cross-examination of witnesses charged with participation in fraudulent transactions which are the subject-matter of the defense pleaded, yet this latitude is subject to limitation in the sound judicial discretion of the trial judge, and unless it is made to appear in this court that such discretion has been exercised to the injury of the complaining party, the judgment will not be reversed merely because of such limitation." (*Omaha Nat. Bank v. Thompson*, 39 Neb., 269.) Applying the foregoing rules to the question in hand, we do not think the record discloses any abuse of discretion by the trial judge in the

limitation placed on the cross-examination in the particulars now under consideration; hence if it was error to limit the cross-examination it does not call for a reversal of the judgment.  On cross-examination of this same witness this question was propounded: "Q. I will ask you if you didn't sell some of these tools yourself to Mr. Olsons?" the object being to show that the witness, a member of the firm of Keys & Bullock, remained in charge of the mortgaged property and disposed of some of it.  To this question it was objected that it was not proper cross-examination and immaterial, and the objection was sustained.  Of this action of the trial court complaint is now made.  The question was one entirely without the line of an ordinary cross-examination; and, in view of the condition of the record of the evidence before us, under a fair enforcement of the rule which we have hereinbefore quoted in regard to cross-examination, we do not think there was any error in disallowing it, which was prejudicial or calls for a reversal of the judgment in the interests of fairness and justice.

What we have said in regard to the two assignments of error, the consideration of which we have just concluded, is equally pertinent and governing in relation to two or three others directed against alleged errors of the trial court in limiting the cross-examination.  It would probably have not been error to allow them, in a case of the nature of the present one, in regard to a transaction claimed to have been fraudulent; but, on the other hand, the rejection of the evidence in cross-examination was not an abuse of discretion on the part of the trial court.

During the examination in chief of a witness called on the part of defendants in error he was asked a question in regard to a "derrick" being on the ground belonging to the Burlington & Missouri River Railway Company, which had been occupied by the firm of Keys & Bullock in the operation of the machinery included in the chattel mortgage to defendants in error.  To this an objection

was interposed and sustained, after which there was an offer to prove that the derrick, some sheds, and other property covered by the mortgage remained on the said premises from September 10, 1888, the date of the mortgage, until within a short time prior to the trial of this suit, the mortgagees exercising no acts of possession or control over them. If any error in excluding this evidence it was without prejudice. The matter was sufficiently shown in the testimony of the witness, given before and after this particular question was asked, and although a motion was sustained by the court to strike out some of this evidence, there was a cross-examination which must have renewed the effect on the minds of the jury, if any impression it may have made had been to any extent destroyed.

During the course of the examination of S. H. Atwood he was testifying about a stone breaker or crusher, which was of the machinery included in the mortgage and which was purchased by him at the sheriff's sale. And he was interrogated as follows:

Q. State if you know what was the matter with it.

Q. Did you have any repairs put on that machine after you purchased it?

Q. What amount was expended for repairs immediately after the purchase of that machine and before it was fit for use?

To each of these questions an objection was interposed and the testimony excluded. Counsel for plaintiffs in error then made the following offer to prove: "The defendant offers to prove by this witness that immediately after purchasing this machine, and before it was fit for use or could be used, they sent to Chicago for one Conrad Nelson, who was an employe of the Gates Iron Works, manufacturers of that machine in question, and had about $200 worth of repairs put on the machine before it was fit for use."

Of another of the witnesses called for plaintiffs in error was asked:

Q. State whether or not you had to have that crusher repaired prior to doing anything with it or not.

Q. I will ask you to state whether or not as a matter of fact the eccentric sleeve was not entirely worn out, and you had to have it repaired, together with the boxing, and if it didn't cost you in the neighborhood of about $200 to get it repaired before you could use it.

These questions were objected to as immaterial and the objections sustained. There followed an offer to prove in words which we will quote: "I offer to prove by this witness that immediately after purchasing this machine, and before it was fit for use or could be used, they sent to Chicago for one Conrad Nelson, who was an employe of the Gates Iron Works, manufacturers of that machine in question, and had about $200 worth of repairs put on the machine before it was fit for use."

The condition of this crusher at the time it was sold by the sheriff and taken by Atwood, the purchaser, and its value, were closely contested points in the trial, and as to which there was a direct and irreconcilable conflict in the evidence; such a marked difference in the estimates of value, and especially of this crusher, that the testimony which would have tended to throw any light on this subject was material. Of such a nature was the testimony sought to be elicited by the questions which we have quoted, and its exclusion was error and well calculated to prejudice the rights of plaintiffs in error. It is said, *arguendo*, for defendants in error on this point that what plaintiffs in error sought to prove was the condition of the machinery after it had been taken to pieces, loaded on cars, shipped from Lincoln to some place in Cass county, and there unloaded and in process of readjustment. This may be applicable and of force in respect to some of the testimony which it was offered to introduce, but as to other portions it was without any pertinence. One, at least, of the questions referred to worn portions of the machinery, the conditions of which could not have been affected or changed by its being handled in taking the machinery apart and transporting it.

There are several other assignments of error argued in the briefs of counsel, but we do not deem their discussion necessary at this time. They are mainly in regard to the admission or exclusion of testimony, also to conduct of counsel in the alleged misstatements of evidence during argument to the jury. If error was committed in any of these particulars it will probably not occur again if another trial be had. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.