JOHN L. LAUTENSCHLAGER, APPELLEE, v. GEORGE W. LAUTENSCHLAGER, APPELLANT.

279 N. W. 200

FILED APRIL 21, 1938. No. 30142.

*Otto E. Placek* and *John E. Mekota,* for appellant.

*H. J. Whitmore, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and YEAGER, District Judge.

YEAGER, District Judge.

This is an action which was originally instituted in the district court for Saline county, Nebraska, by John L. Lautenschlager, plaintiff and appellee herein, against George W. Lautenschlager, defendant and appellant herein. The action was to set aside a release of mortgage given by plaintiff to defendant and to foreclose the mortgage which had been released.

That portion of the petition relating to foreclosure was in the usual form. The portion relating to the vacation of the release set forth that the plaintiff had executed the release in question, but that he had never made delivery to the defendant and that defendant had obtained its possession by extracting it from the papers of plaintiff without the plaintiff's consent, and that defendant thereafter filed it for record in the office of the register of deeds of Saline county, Nebraska. The amended answer contained a general denial and the further allegation that plaintiff executed and delivered to defendant the release of the mortgage and that the said mortgage was therefore canceled.

No question is raised as to the validity of the mortgage

and none that it was in default. The sole question on the issues is as to whether or not there was a delivery of the release. In addition to this question on the issues, a question is raised as to the propriety of the rejection of certain offered testimony of a witness on the ground that it was privileged, being conversations between attorney and client. The district court canceled and held for naught the release and decreed foreclosure of the mortgage.

We will discuss the matter of the rejection of the offered testimony first, since if this point is decided favorably to appellant the other one need not be considered at this time, because in such case a reversal of the judgment herein and a new trial would be required.

Plaintiff and defendant went to the office of Stanley Bartos, an attorney, in Wilber, Nebraska, for the purpose of discussing the necessity and legal effect of the release in question, and other matters pertaining to the estate of the plaintiff. These matters were discussed among all three of them. Mr. Bartos was called as a witness for the defendant to testify in relation to the matters discussed. He was asked to state the conversation, and so that there may be no mistake the record thereon is quoted: "Q. State that conversation. Plaintiff objects as calling for a privileged communication." The objection was sustained. The following offer was made, to which objection was made and sustained: "Q. We offer to prove that in a conversation which was taken part in by the plaintiff in this action and the witness on the stand, in the presence of the defendant, George W. Lautenschlager, in the latter part of February or the fore part of March, 1935, at the office of the witness in Wilber, Nebraska, the plaintiff inquired of the witness about transferring his securities, including the release of the mortgage involved in this action, to his son, George Lautenschlager, and was told of the necessity of a delivery to make a valid and binding transfer." There were other offers made and rejected, but they have no direct bearing on the particular subject-matter of this action.

If nothing further appeared in the bill of exceptions,

it would be necessary to determine whether or not under the law this evidence was properly excluded. This necessity has not arisen since, if its exclusion were erroneous, it is cured further on in the direct testimony of the same witness. Subsequently in his testimony, the same witness testified without objection to a conversation with plaintiff and his daughters which occurred in May or June, 1936, wherein in much more detail than the quoted offer contemplates, the identical conversation called for by the question to which objection was sustained was related. The conversation testified to without objection is as follows: "Q. Tell us what that question was. A. They came into the office and Mr. Lautenschlager introduced them, says that those were his daughters. He made a remark then how fleshy they were, and we passed the time of the day. And Mr. Lautenschlager says to me, he says, 'Now, what did you do to me, Stanley?' He always called me by my first name. I says, 'Why?' He says, 'Why,' he says, 'I didn't intend that George should have all that property, all of my property.' I says, 'Yes, you did, Mr. Lautenschlager,' I says, 'You and I have gone over that very fully.' Then the ladies interrupted and they wanted to know the condition, mental condition. One of them, I don't know which one, says, 'My father at that time when he was down here didn't know what he was doing.' I says, 'Yes, he did, he had his mind pretty well made up.' I says, 'As a matter of fact I sent him home the first time and told him not to do anything until he has plenty of time to think matters over.' They says, 'Well, he was suffering.' I says, 'Yes; he had or thought he had at that time what was going to be a fatal disease; he didn't look very good to me, but so far as mental condition is concerned, that was all right.' And then Mr. Lautenschlager says, 'Well,' he says, 'Stanley, I didn't intend that George should have that only after I die.' I says, 'Mr. Lautenschlager, you know that you told me that on account of Bill's estate having been so much trouble in its probate that you did not want your estate to be probated.' I says, 'You remember when I told you that

there was two ways of fixing these papers, one was by making a will and a second one was by absolute delivery in your lifetime. I went over all that matter with you. Don't you remember when I told you you couldn't be like an Indian giver, or you can't keep something and give it at the same time.' I says, 'Now, didn't I make that statement to you?' And Mr. Lautenschlager says, 'Yes; you did.' I says, 'You know just as well as you are sitting before me that all these papers were delivered by you to George and that you knew that you were giving the property away.' And then the ladies spoke up and says, 'Well, will you testify to Mr. Lautenschlager's condition?' I says, 'I will get up and testify to the truth, if you want me to.' I says, 'I will not appear for Mr. Lautenschlager as a lawyer;' and then they accused me of wanting to have a lawsuit about this. I says, 'No, ladies, you are mistaken; if Mr. Lautenschlager brings a lawsuit I will not be his attorney, and I will get up and testify to the facts as they occurred.' And with that they picked up and didn't even say goodby, and left the office."

A comparison of the offer with the quoted lengthy answer of Mr. Bartos shows clearly and without question that, though the trial court excluded the testimony contemplated in the offer when the conversation was called for directly, yet the selfsame conversation was admitted without objection when the witness was called upon to relate it as he had previously related it on the occasion when the plaintiff and his daughters were in the office of the witness. The court had before it the rejected evidence in all of its details and doubtless considered it along with all the other evidence in the case.

It is but the statement of a truism to say that in a trial to the court where evidence is excluded erroneously, but where the same evidence is elicited from the same witness and admitted later on in the trial of the case and is fully and completely presented, error cannot be predicated on such erroneous rejection. The principle controlling this situation has been before this court on a number of occa-

sions and the following pronouncements have been made: Error in excluding evidence is cured by its subsequent admission. *Farmers & Merchants Ins. Co. v. Malone,* 45 Neb. 302, 63 N. W. 802. "Alleged error in the exclusion of offered testimony is of no avail if the same testimony, or testimony to the same effect, had been, or was afterwards, allowed to be given by the witness." *Union P. R. Co. v. Evans,* 52 Neb. 50, 71 N. W. 1062; *Atwood v. Marshall,* 52 Neb. 173, 71 N. W. 1064. See *Union State Bank v. Hutton,* 1 Neb. (Unof.) 795, 95 N. W. 1061; *Flanagan v. Fabens,* 77 Neb. 705, 110 N. W. 655. Where evidence is improperly excluded, but the witness, on a subsequent examination, states substantially the same facts sought to be elicited, the error is cured. *Jonasen v. Kennedy,* 39 Neb. 313, 58 N. W. 122. It thus becomes apparent that it is not necessary in this case to determine the question of whether or not the offered testimony was privileged.

The two remaining assignments of error will be treated together. The appellant contends that the court erred in deciding the case on theories not alleged or proved, and that the court erred in finding that no delivery of the release of mortgage had been made.

It is true that an examination of the decree shows that the trial court made findings not based upon the issues presented by the pleadings; yet, on the other hand, a specific finding was made upon the issues presented to the trial court and on the issue presented to this court for review. The only issue before the court outside of the mortgage foreclosure, which is not in question except as an incident to the judgment on the release, is as to whether or not there was a delivery of the release by plaintiff to defendant. The specific finding in the decree is as follows: "That the defendant, George W. Lautenschlager, wrongfully and secretly obtained possession of the said release on May 23, 1936, wrongfully filed the same in the office of the register of deeds of Saline county and caused the same to be recorded, whereby the said mortgage deed appeared to be discharged of record "

The issue before the court was the question as to whether or not there was a 'delivery of the release and that issue was specifically determined. The finding is not inconsistent with the pleadings or the proof, and it is nowhere contended that this finding is inconsistent with any other finding made with respect to the issues properly presented by the pleadings or proof. Therefore, such findings as were made with reference to matters not presented as issues must be disregarded as surplusage.

Did the court err in finding that no delivery of the release of mortgage had been made and delivered? A determination of this question must rest upon the credibility of witnesses, surrounding circumstances, and an interpretation of the intent and purposes of the parties as disclosed by the evidence, and must be weighed in the light of the rule laid down for review of equity cases coming to this court. A statement of the rule is as follows: On appeal in an equity action involving questions of fact where there is a conflict in the evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying. *Johnson v. Erickson,* 110 Neb. 511, 194 N. W. 670; *Otto v. Gunnarson Bros.,* 102 Neb. 613, 168 N. W. 361; *Enterprise Planing Mill Co. v. Methodist Episcopal Church,* 100 Neb. 29, 158 N. W. 386.

On the part of plaintiff there is a direct denial of delivery and an accusation that the release was extracted from the plaintiff's private papers. On the other hand, the defendant testifies that there was an actual manual delivery, but that when the parties returned home he permitted his father, the plaintiff, to take the release into the house and place it with other papers. Stanley Bartos also testifies to a manual delivery. There are other matters which are of significance, as disclosed by the evidence, which should be considered here and which were doubtless considered by the trial court. The release of mortgage was executed in January, 1935, when plaintiff was living in the home of defendant. It was not recorded until May, 1936, which was after plaintiff had gone to Lincoln, and

immediately after plaintiff had called from Lincoln and made inquiry about the release. No satisfactory explanation of the immediate recording is given.

Another matter of considerable significance appears. Plaintiff had other children and he wanted a distribution of his estate among them, but did not want a distribution through the processes of the county court. At the time of the execution of the release, transfers of all other properties of plaintiff, including securities, were executed to the defendant. From the bill of exceptions it is apparent that there was no intention at any time, if delivery was made, that these properties should become the absolute property of the defendant. The defendant does not seriously so contend. And no conversation is related applying separately and alone to the release. It is clear that, if plaintiff desired to transfer and deliver his estate to defendant, he also intended that there should be a distribution of the estate among his children on his death. No method of distribution was apparently arrived at or discussed. It seems that some significance ought to be attached to the circumstance of a delivery without an accompanying plan of distribution, when it was a distribution without probate that plaintiff was seeking to effectuate, which purpose was well known to defendant.

In view of the fact that the trial court observed the parties and the witnesses and their demeanor while testifying, and doubtless took into consideration all circumstances disclosed by the evidence, we cannot say that the decision was contrary to the evidence or the greater weight of the evidence.

AFFIRMED.