LU ETTA MAY GUGELMAN, APPELLEE, v. KANSAS CITY LIFE
INSURANCE COMPANY, APPELLANT.

289 N. W. 842

FILED JANUARY 19, 1940. No. 30664.

*Cheney & Cheney*, for appellant.

*Butler, James & McCarl* and *Frank B. Morrison, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is an action to recover the death benefits provided
for in a policy of life insurance. Plaintiff prevailed in the
court below. Defendant appeals.

Plaintiff alleges the application for and the issuance of
a policy of life insurance to one Lawrence I. Gugelman,
hereinafter called the insured, payment of the first and
second annual premiums, the death of the insured while the
policy was in force, proof of death, the full performance of
all conditions and provisions of the policy, and defendant's
refusal to pay. In its answer, the defendant admits the issu-
ance of the policy, the payment of the premiums, the death
of the insured during the period for which the premiums
were paid, and alleges that less than five months prior
to his application for insurance the insured was treated for

heart trouble and was advised of his physical condition; that, in answer to three questions in the application, the insured falsely and fraudulently omitted information relative to his condition and treatment therefor; that the answers were material to the risk assumed; that they were taken to be true and were relied upon; that the defendant first learned of the falsity of the answers subsequent to the death of the insured; that defendant would not have issued the policy had the questions been truthfully answered; that the insured was not in good health when the policy was delivered, and that, by reason thereof, defendant is not liable. Defendant tendered the return of the premiums paid.

The plaintiff replied, and alleged that the defendant's agent propounded the questions to the insured; that true answers were made; that, if any part of the application was false (which plaintiff denied), it was so written by the defendant's agent with full knowledge of the facts; and that defendant is estopped to claim that any answer contained in the application is false.

Trial was had to a jury. After both parties had rested, the defendant moved for a directed verdict. The motion was denied. The motion will be set out later herein. The jury's verdict was for the plaintiff.

Defendant assigns two errors upon which it relies for reversal.

The doctor's deposition was taken and offered by the defendant. The first assignment is the refusal of the trial court to permit the reading in evidence of the doctor's answer to the following question: "And was he," (the insured) "at that time, advised that he was being treated for a condition of the heart?" The record does not disclose that the defendant made an offer as to what the doctor's answer would be if his answer were admitted.

This court has held: "In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited." *Cox v. Kee*, 107 Neb. 587, 186 N. W. 974.

The record reveals that this question was subsequently asked: "Do you recall that you did advise him as to the condition of his heart at that time?" The answer was admitted, as follows: "I think I did tell him what his trouble was * * *."

This court has held: "Alleged error in the exclusion of offered testimony is of no avail if the same testimony, or testimony to the same effect, had been, or was afterwards, allowed to be given by the witness." *Union P. R. Co. v. Evans,* 52 Neb. 50, 71 N. W. 1062; *Lautenschlager v. Lautenschlager,* 134 Neb. 577, 279 N. W. 200. The defendant's first assignment of error is not sustained.

Defendant's second assignment is that the trial court erred in overruling its motion for a directed verdict. This contention is based upon the proposition that "a provision that a policy shall not take effect unless the insured is in good health upon the date of issuance, is a condition precedent without which there is no liability under the policy."

At the time the application for insurance was signed, the insured paid the agent $11.75 in cash, and gave him a note for $11.75. The clause in the application, which defendant now argues is a condition precedent to liability, is as follows: "If this application is not accompanied by the first premium in cash it is agreed that the company assumes no liability whatever until a policy of insurance is actually delivered to me during my lifetime and while I am in good health * * *."

The defendant's motion for a directed verdict was as follows:

"The defendant moves for a directed verdict on the ground that the undisputed evidence shows that Lawrence I. Gugelman was treated for heart trouble five weeks before signing his application for insurance with the defendant company; that he interviewed Doctor Brewster twelve days before signing his application; that he knew the cause for his treatment. That at the time of signing of the application he stated that he was in good health; that the statement was false. That he accepted the policy with that ques-

tion in the application, a photostatic copy of which was attached to the policy; and that he accepted the policy with that question and answer in the same and made no objection; and that he died of heart failure."

It appears to the writer that the above motion went to, and directed the court's attention to, the truth or falsity of the answers to the questions contained in the application, and did not direct the court's attention to, and was not based upon, the clause in the application above set out. However, it will be treated as having raised the question now presented.

We have carefully examined the testimony offered dealing with this proposition. The application for the insurance was dated May 4, 1937. The policy was dated May 12, 1937. The evidence is not specific as to the date of the delivery. The most definite statement is that it was delivered about two weeks after the application, which would be about May 18. What, then, is the evidence as to the condition of insured's health *at that time?*

The insured was examined by Dr. F. A. Brewster, of Holdrege, Nebraska, on January 27, 1937. The doctor's record shows that at that time the insured complained of "pain in region of heart and shoulder and arm, short of breath on exertion." His blood pressure was 130/70. His urine was normal. The record further recites that the physical examination showed "heart enlarged" and that he "advised rest."

The doctor stated that he then advised against heavy work and as to his diet. At that time he prescribed a tonic.

The insured went to the doctor "for treatment" on February 24, 1937, March 26, 1937, and April 22, 1937. The findings in the February examination are not disclosed. The March examination indicated a high blood pressure and a heavy duty on the heart as a result thereof. The doctor's record did not indicate a "worse condition" at that time. The April examination showed the blood pressure to be less than it had been at the time it was recorded in either January or March. The doctor recalled no advice given the insured at that time about his condition.

At various times the doctor told the insured not to work so hard. Defendant's other evidence as to the condition of the health of the insured is the statement of the mother (plaintiff) on the "proof of death" that the cause of the death was "heart failure." In answer to the question, "When did last illness begin?" the answer was "Two hours before death." Death occurred May 15, 1938, or a year and three days following the date of the issuance off the policy. The doctor who attended the insured at the time of his death did not testify.

The plaintiff's evidence in rebuttal shows that the insured worked about his farm at all times from January, 1937, to the time of his death; that he was not incapacitated, never complained, that his appetite was good, and that he slept "good." When the application was made by the insured, he made no complaint about being in bad health; he appeared to be in good health and to have a strong constitution.

This court has held:

"The delivery of a life policy, the acceptance of premiums, and the treatment of the policy by the insurer and the insured as a contract raises a presumption that insured was in sound health on the date of the policy.

"The burden of proving *as a defense* that insured at the date of the policy was not in sound health is upon insurer." *Weddle v. Prudential Ins. Co.*, 130 Neb. 744, 266 N. W. 624.

Good health is a generic expression, resting mostly in opinion. *Hinnenkamp v. Metropolitan Life Ins. Co.*, 134 Neb. 846, 858, 279 N. W. 784. Good health "is a comparative term, and means that the insured has no important or serious disease; in other words, that he is free from any ailment that seriously affects the general soundness or healthfulness of the system, as distinguished from mere temporary indisposition, which does not tend to weaken or undermine the constitution, though existing at the time." 1 Couch, Cyclopedia of Insurance Law, 244, sec. 130. See, also, 37 C. J. 402.

The fact that insured had an enlarged heart in January, 1937, and high blood pressure in March, 1937, and died of

"heart failure" in May, 1938, does not show, as a matter of law, that the insured was not in good health at the time of the delivery of the policy in May, 1937. This is particularly true in view of the fact that the evidence indicates that he was "working right along" at the time the policy was taken out; that, from April, 1937, until the time of his death, it does not appear that he had consulted a doctor or was in need of medical treatment; and that defendant did not establish, as a matter of direct evidence, that, if the agent had correctly stated in the application the facts regarding the insured's visits to and the findings of Dr. Brewster, it would have refused to issue the policy.

The defendant's second assignment of error is not sustained.

The judgment of the trial court is

AFFIRMED.