IN THE MATTER OF THE ESTATE OF ALICE M. WOODWARD, DECEASED, BYRON STALL, APPELLEE, V. EMMA GROFF, ET AL., APPELLANTS.

23 N. W. 2d 75

FILED MAY 17, 1946. No. 32052.

*William Niklaus* and *I. D. Beynon, for appellants.*
*Ginsburg & Ginsburg,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This is an appeal from the verdict of a jury and judgment thereon finding that the will of Alice M. Woodward, deceased, was her last will and testament. Her death occurred December 18, 1944. She was then 76 years of age. The will was executed February 1, 1943. Its provisions

appointed proponent, Byron Stall, a half brother, as executor, established a $500 trust fund for a niece of testatrix, and devised the residue of her substantial estate to two nephews, sons of proponent. The will was submitted to the county court of Lancaster County for probate where certain heirs at law, including a brother, an adopted daughter of a deceased sister, and four nephews and nieces of testatrix contested its probate on the grounds of testamentary incapacity and undue influence. A half brother and a nephew of testatrix did not join in the contest.

The issues were resolved in favor of proponent in the county court and contestants appealed to the district court. There, after a lengthy trial to a jury, proponent was awarded a verdict and judgment. Contestants' motion for new trial was overruled and they appealed to this court. Their assignments of error are substantially that (1) the trial court erred in refusing to give contestant's requested instruction No. 1; (2) erred in giving instruction No. 6, 8, 11, 12, and 13 on its own motion; (3) erred in excluding certain questions and answers from the evidence; and (4) that the evidence is legally insufficient to sustain the verdict and judgment. We find that these assignments cannot be sustained.

The first assignment is grounded upon the contention that the case at bar is one where decision of the jury depended primarily upon contestants' positive evidence and proponent's negative evidence. Therefrom it is argued that contestants' proffered instruction No. 1, to the general effect that the testimony of witnesses to a positive fact is stronger and may outweigh even a greater amount of negative testimony given by other witnesses, was erroneously refused.

In that regard we call attention to the fact that "Testimony may be positive in character although amounting to a negative statement or showing a negative situation." 32 C. J. S., Evidence, § 1037, p. 1079. We believe that contestants in their argument fail to make the vital distinction between testimony which is negative in form and that

which is negative in character. Evidence is positive in character where the witness states that a certain thing did or did not happen to exist, and negative in character where the witness states that he did not see or know of the happening or existence of a circumstance or fact. 31 C. J. S., Evidence, § 2, p. 506. Viewing the record in that light, we fail to observe how, upon any theory, either the trial court or this court could find that the testimony of contestants' witnesses could be said to be positive and the proponent's negative.

In any event, the rule of law contended for by contestants ordinarily has application only in cases where the testimony of the parties relate to the presence or absence, existence or nonexistence, occurrence or nonoccurrence of the same specific, physical facts or events and not to positive and negative intangible opinions based upon facts and circumstances varying by reason of the experiences and observations of the particular witness.

However that may be, we find no case, and none is cited by counsel, wherein a similar instruction has ever been approved in this jurisdiction. This court in a proper case when weighing the sufficiency of the evidence has had occasion to make reference to the greater weight to be accorded testimony truly positive in character as distinguished from testimony truly negative in character. However, in doing so, it has been with reference to the propriety of submission of the cause to the jury and the sufficiency of the evidence to sustain the jury's verdict. As a matter of fact in Crabtree v. Missouri P. Ry. Co., 86 Neb. 33, 124 N. W. 932, this court decided that an instruction similar in character was erroneous and properly refused. In doing so, it was held: "An instruction, by which the jury was sought to be directed that the evidence of certain witnesses was entitled to greater weight than that of others concerning a disputed fact, invades the province of the jury, is erroneous, and was properly refused."

The reasons for so holding are entirely logical because the weight to be given to positive and negative evidence,

separately or comparatively, is for the jury to determine and it is affected by various factors, such as the credibility of the witnesses, their bias or interest, the accuracy of their memory, their opportunity for observation, the attention they were giving at the time in question, and the reasonableness or unreasonableness of their testimony. 32 C. J. S., Evidence, § 1037, p. 1088. The applicable rule in this jurisdiction appears in 64 C. J., Trial, § 509, p. 577, wherein it is said: "Where the rule prohibiting courts from expressing an opinion or charging on the facts or evidence prevails, it is usually held that instructions as to the relative weight to be given to positive and negative testimony invade the province of the jury and should not be given, * * *." Cases from many jurisdictions, including Crabtree v. Missouri P. Ry. Co., *supra*, are cited in the note as supporting the statement. Therefore, we conclude that the trial court did not err in refusing to give contestants' proffered instruction No. 1.

The next assignment of error is that instructions No. 6, 8, 11, 12, and 13 given by the trial court on its own motion were prejudicially erroneous. In this court they are attacked in three separate assignments of error which will be treated together in this opinion because from an examination of contestants' motion for new trial we find that the assignments may not be considered on the merits if any one of the trial court's instructions from Nos. 1 to 25 inclusive correctly stated the law. The record reveals that the assignment of error in contestants' motion for a new trial was an attack upon all of the trial court's instructions as a whole and not separately. As recently as Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602, this court again adhered to the salutary rule that "An assignment of error in a motion for a new trial to the effect that the trial court erred in giving a group of instructions does not require a consideration of such assignment further than to ascertain that one of the instructions was properly given." In conformity therewith, we have examined all of the instructions thus attacked by contestants and conclude that at least some

of them correctly stated the law, therefore, we are not required to give the three assignments of error in this court further consideration.

The third assignment of error is that the trial court erred in the exclusion of certain questions and answers. They appear to have been contained in the direct testimony in a deposition of a former husband of testatrix and related to her alleged peculiarities of conduct and deportment while he lived with her a short time in 1934. With reference to that assignment this court is confronted at once with the query whether error may be predicated upon the exclusion without offer of proof which contestants failed to make.

In that connection the record discloses that when the deposition was taken it was stipulated by counsel that objections to the questions and answers should be reserved and not made until the deposition was read at the trial, at which time they could be made in the same manner as if the witness were then appearing and testifying in person. At the trial objections were made to a large number of questions and each of them at the same time. The trial court sustained the objections to many of them and as the record comes to this court neither the questions nor the answers, nor any of them, to which contestants' assignments are directed, were ever thereafter read or offered to be read and no offers of proof were ever made in connection therewith.

It has always been the rule in this jurisdiction that "In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited." Gugelman v. Kansas City Life Ins. Co., 137 Neb. 411, 289 N. W. 842; Cox v. Kee, 107 Neb. 587, 186 N. W. 974. Since contestants' assignment of error comes squarely within that rule, we cannot sustain it. In so holding we have not overlooked qualification of the rule stated in In re Estate of Johnson, 100 Neb. 791, 161 N. W. 429, which is factually distinguishable from the situation

at bar.

We turn finally to the question whether the evidence is sufficient to sustain the verdict and judgment. It is elementary that a defeated litigant in a will contest case is not entitled to a trial de novo on appeal to this court. Issues of fact in such cases are determined in the Supreme Court by the sufficiency of the evidence under the law to sustain the verdict of the jury or the findings of the district court, and where the evidence in a case tried to the jury is conflicting, issues of fact are questions for its determination. In re Estate of Kerr, 117 Neb. 630, 222 N. W. 63.

In measuring the sufficiency of the evidence to sustain a verdict and judgment, we are bound by well-established precedent. At the outset we call attention to the fact that it is not medical soundnesss of mind that governs but testamentary capacity as legally defined. A high degree of mentality is not required to make a valid will, in case it is found to be free from undue influence. In re Estate of Frazier, 131 Neb. 61, 267 N. W. 181. As legally defined, a person who understands (1) the nature of his acts; (2) the extent of his property; (3) the proposed disposition of it; and (4) the natural objects of his bounty, is competent to make a will. In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37. By analogy, of course, a person lacks testamentary capacity only when one or more of such elements are wanting.

In a recent will contest case this court held that: "The question of testamentary capacity relates exclusively to the time when the will was made, and although competent evidence of testator's condition of mind long before, closely approaching, and shortly after the time of its execution is admissible, it is received only to assist in revealing his state of mind at that time and the jury should be so instructed.

"A nonexpert witness who is shown to have had a more or less extended intimate acquaintance with a person may be permitted to state his opinion as to the mental condition of that person, if said condition becomes a material subject

of inquiry, by giving the facts and circumstances upon which the opinion is based.

"It must appear, however, that a witness, lay or expert, in giving his opinion as to mental capacity of a testator to make a will had in mind the quality of mental capacity essential to the making of a valid will.

"The burden is on the proponent of a will to prove the execution of the will and the testamentary capacity of the testator. However, if the proponent makes a prima facie case as to testamentary capacity it then devolves upon the contestant to overcome the presumption arising therefrom after which the burden of going ahead and proving testamentary capacity by preponderance. of the evidence devolves upon the proponent." In re Estate of Inda, *supra*. See, also, In re Estate of Witte, 145 Neb. 295, 16 N. W. 2d 203.

On the other hand, this court has also held that each and all of the elements necessary to be established by competent evidence to warrant the rejection of a will on the ground of undue influence are (1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. In that connection the burden of proving that a will resulted from undue influence is on the contestants. Undue influence cannot be inferred alone from motive or opportunity, and mere suspicion of undue influence on the testator is insufficient to require submission of the question to the jury or to sustain a verdict and judgment. In re Estate of Inda, *supra;* In re Estate of Witte, *supra*.

Bearing the above rules in mind we have examined the record. The witnesses are so numerous and the evidence is so voluminous that we will not attempt to analyze it at length in this opinion. We see no necessity of doing so. Suffice it to say. the proponent first adduced competent evidence proving the lawful execution of the will and the testamentary capacity of the testatrix, thereby making a prima facie case

Contestants then undertook to overcome the presumption arising therefrom and to establish undue influence. For that purpose they adduced the testimony of many witnesses including, among others, five of the contestants, a nurse who was acquainted with and had worked with testatrix, custodian of an apartment where the testatrix had lived, her former husband, a chiropractor, and a physician with previous experience in nervous and mental diseases who testified hypothetically. The half brother of testatrix, who did not join in this contest, testified for contestants but in doing so did not impugn the mental capacity of testatrix. The record discloses that the trial court allowed the utmost latitude in permitting contestants to adduce testimony extending over a period of most of the life of testatrix, preceding the date of the execution of her will and thereafter until death.

After contestants had rested proponent adduced the testimony of numerous witnesses including, among others, the nephew of testatrix who did not join in the contest, the personal physician who professionally examined and cared for testatrix from October 16, 1943, until her death, a lawyer who drew a former will for her, another who had represented her in litigation, another who had business transactions with her, close personal friends, and persons with whom she had transacted business at or about the time of execution of the will, many years prior thereto, and subsequently until death. Many of them testified that she was mentally competent and their evidence affirmatively related to the quality of mental capacity essential to the making of a valid will on February 1, 1943. Competent evidence was also adduced by proponent that the will was not unnatural, unreasonable, or inconsistent with the duty of testatrix to family and that it did not result from undue influence.

After proponent had completed his testimony contestants briefly adduced further evidence.

We find that the record is replete with competent evidence adduced by proponent justifying a finding that the testa-

trix was possessed of testamentary capacity when she lawfully executed the will and that its execution was not the result of undue influence. Proponent argues that the evidence adduced by contestants was incompetent and legally insufficient to negative any one or more of the elements of testamentary capacity, or to affirmatively establish all the elements of undue influence, thereby requiring a directed verdict for proponent in any event. However, since the trial court submitted both issues to the jury upon the assumption that the evidence was conflicting, and proponent having obtained a favorable verdict is not prejudiced thereby, it is unnecessary to analyze contestants' evidence and discuss or decide that question.

An examination of the record requires us to conclude that the evidence was amply sufficient to sustain the verdict and judgment. For the reasons heretofore stated, the judgment is affirmed.

AFFIRMED.

PAINE, J., not participating.