ROSIE J. ROSE, APPELLANT, V. CITY OF LINCOLN, A MUNICIPAL
CORPORATION, APPELLEE.

449 N.W.2d 522

Filed December 22, 1989.   No. 88-090.

Hugh I. Abrahamson and, on brief, Frank Meares for
appellant.

Dana W. Roper, Chief Assistant City Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Rosie J. Rose appeals from the judgment on a $3,300 verdict in an eminent domain proceeding. See Neb. Rev. Stat. §§ 76-701 et seq. (Reissue 1986). Rose also appeals from the allowance of fees for the condemnees' expert witness and attorney and from the assessment of interest in a condemnation case.

During pendency of this appeal, George P. Rose died. The appeal was revived in the name of Rosie Rose, the heir of George Rose and, apparently, the personal representative of the estate of George Rose.

As background for the eminent domain proceeding, the city had installed a water main at the east edge of land eventually acquired by George and Rosie Rose in Saunders County. The presence of the city's subterranean water main on the tract in question is somewhat explained by vague references to an unrecorded easement from the Chicago, Burlington and Quincy Railroad Co. to the city in 1931 for construction and maintenance of a municipal waterline. Pursuant to the easement, in 1932 the city installed a cast-iron water main, which was 36 inches in diameter and ran along the east edge of Roses' later-acquired land.

Roses were unaware of the city's easement for the waterline and the existence of the main. Sometime after acquisition of their land in 1979, Roses commenced construction of a waterway to irrigate their sod farm on the acquired parcel and, during such work, discovered the city's main. When the city learned about Roses' construction and excavation, which would affect the water main, the city requested that Roses cease their work. Roses refused, and the city commenced an action, seeking, inter alia, to enjoin Roses from injuring the water main. After a trial in the city's action, the district court, on July 15, 1980, entered judgment by which the city was determined to be the "owner" of the tract occupied by its water main, namely, a 50-foot-wide tract which ran, generally, north and south along

the east side of Roses' land adjacent to U.S. Highway 6 in Saunders County, Nebraska. In its 1980 judgment, the district court also permanently enjoined Roses from trespassing on the tract where the city's water main was located and from damaging the waterline. None appealed from the judgment.

On July 7, 1982, Roses commenced an inverse condemnation proceeding pursuant to § 76-705, which provides:

> If any condemner shall have taken or damaged property for public use without instituting condemnation proceedings, the condemnee, in addition to any other available remedy, may file a petition with the county judge of the county where the property or some part thereof is situated to have the damages ascertained and determined.

Roses claimed that the city had appropriated fee title for the tract where the water main was located and, therefore, had caused a "partial taking and damage" of Roses' real estate. The appraisers appointed by the county judge awarded Roses $1,453.70. After Roses' appeal to and trial in the district court, the verdict in Roses' first trial was set aside. See *Rose v. City of Lincoln*, 223 Neb. 148, 388 N.W.2d 127 (1986).

Trial of Roses' condemnation case was transferred to Lancaster County. George Rose testified that as the result of the permanent injunction granted to the city in 1980, Roses' real estate adjoining the site of the city's waterline had "zero" value, since the intended sod farm was a virtual impossibility. Rose also testified that access to the sod farm was so restricted by the location of the city's water main that use of Roses' land as a sod farm became impractical. During direct examination of George Rose, the court refused to allow Rose to testify about loss of access to Roses' sod farm. In an offer of proof, Rose related the substance of his excluded testimony: The city's water main site prevented reasonable access to Roses' property, was an inconvenience regarding the remainder of Roses' land, and had caused a diminution in the value of the remainder. However, in his rebuttal testimony, Rose described the restricted or lost access resulting from the city's acquisition of the water main site. Further, according to Rose, the "per acre" value of Roses' property in 1980 was the same as the value for the land in 1982, or, as George Rose expressed:

[Roses' lawyer] Now, Mr. Rose, have you an opinion, as the owner of this land, as to the value of your land in 1980 and 1982?

[George Rose] Would you repeat that?

[Lawyer] Yes. What is the value of your land in '80 and '82?

[George Rose] Two thousand dollars an acre.

Expert witnesses for the city testified that the city had acquired 1.9 acres of Roses' real estate and that on account of the acquisition, Roses had sustained damages which ranged from $1,425 to $1,900. Over Roses' objection, the court instructed the jury that the date of the city's appropriation or taking was July 7, 1982, when Roses filed their petition and alleged an inverse condemnation. Roses requested that the jury be instructed:

> If you find from a proponderence [sic] of the evidence that the Plaintiff has been deprived of reasonable ingress to and egress from its [sic] property under all the circumstances, you should take this fact into consideration in determining the Plaintiffs' damage under other instructions herein. It is not however to be considered as a separate element of damage. If you do not so find, then you should not take it into consideration in determining the Plaintiffs' damages.

The court rejected Roses' tendered instruction on access, but did instruct the jury that in determining the value of the land taken or damaged, the jury was entitled to consider all the land's uses and purposes which existed at the date of the city's acquisition, including "uses which are reasonably probable and likely to occur in the near future and which affect the market value of the property." Also, the court informed the jury that "[j]ust compensation means the difference as of [the date of taking] between the fair and reasonable market value of the property before the taking and the fair and reasonable market value of the property thereafter." Regarding the remainder of Roses' real estate after the city's acquisition, the court instructed:

> In arriving at the reduction in the fair and reasonable market value of the property, you must consider its value

for any purpose for which it might reasonably be used, taking into account all of the uses and purposes to which it could have been put and every fact and circumstance shown in the evidence bearing upon its value as of [the date of taking], which are not speculative. . . .

You may also consider every non-speculative element of inconvenience, annoyance, and disadvantage which the taking has caused to plaintiffs and which would influence a purchaser's decision to buy the property or pay a certain amount for it.

The jury was allowed to view the premises and was instructed by the court: "You may consider your viewing of the property in connection with all the other evidence in arriving at your verdict."

After viewing the premises, the jury awarded Roses $3,300 as damages for the city's appropriation or taking. The court also awarded Roses $1,500 as a fee for their lawyer and $475 as a fee for Roses' expert witness but made no express provision for interest.

Rosie Rose complains that the trial court erred in (1) instructing the jury that the date of the city's taking was July 7, 1982, when Roses' condemnation petition was filed, rather than July 15, 1980, when the city obtained the judgment against Roses; (2) refusing to allow George Rose to testify on direct examination concerning the claimed loss of access to Roses' real estate; and (3) providing no express allowance of interest and in the amounts allowed as fees for Roses' expert witness and lawyer.

Both Rose and the city contend that this appeal involves an eminent domain proceeding attributable to the 1980 judgment against Roses. "The Supreme Court disposes of an appeal on the basis of the theory presented by the pleadings on which the case was tried." *Holden v. Urban*, 224 Neb. 472, 474, 398 N.W.2d 699, 701 (1987). See, also, *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988).

## INSTRUCTIONS

Rose contends that the trial court erred by its instructions which stated that the date of taking was July 7, 1982, the date

on which Roses commenced their inverse condemnation proceeding. Rose maintains that the date of taking was actually July 15, 1980, when the city obtained the judgment in which the court determined that the city was the "owner" of the tract in question and permanently enjoined Roses from trespassing on the tract and damaging the city's water main.

The measure of damages for land taken for public use is established at the time of the governmental taking. *Chaloupka v. State*, 176 Neb. 746, 127 N.W.2d 291 (1964).

Ordinarily, a governmental taking occurs when the condemner files its condemnation petition for proceedings before appraisers appointed to determine whether the condemnee has been damaged by the governmental appropriation or taking. See, *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978); *Chaloupka v. State, supra*; *Schmailzl v. State*, 176 Neb. 617, 126 N.W.2d 821 (1964).

However, in an inverse condemnation, the rule varies in many jurisdictions concerning determination of a date for the governmental taking. Some courts hold that the taking occurs and, therefore, the date for taking is established when the petition for an eminent domain proceeding is filed, whether the proceeding is commenced by a condemner or a condemnee. See, *Hayden v. Board of County Comm'rs*, 41 Colo. App. 102, 580 P.2d 830 (1978); *State et al. v. Blackiston Land Co., Inc.*, 158 Ind. App. 93, 301 N.E.2d 663 (1973). Other courts hold that in an inverse condemnation, the taking occurs when a government appropriates a person's private property to a public use. See, *Evans v. Hope*, 12 Ohio St. 3d 119, 465 N.E.2d 869 (1984) (date of taking is determined by the government's actual physical appropriation); *State Highway Com. v. Stumbo et al*, 222 Or. 62, 73, 352 P.2d 478, 483 (1960) (taking occurs "at the time of the physical invasion, for the landowner is by this process ousted from any further use of his property except the right to claim a reasonable value for its occupation . . ."); *Hoyle v. City of Charlotte*, 276 N.C. 292, 172 S.E.2d 1 (1970); *City of Los Angeles v. Tilam*, 142 Cal. App. 3d 694, 191 Cal. Rptr. 229 (1983); *Brasher v. Childersburg Waterworks Etc. Bd.*, 428 So. 2d 71 (Ala. Civ. App. 1983); *Department of Transportation v. Shaw*, 36 Ill. App. 3d 972, 345 N.E.2d 153 (1976). See, also,

Annot., 2 A.L.R.3d 1038 (1965).

As the court noted in *Department of Transportation v. Shaw, supra* at 982-83, 345 N.E.2d at 161:

> Because the date of the injury in inverse condemnation situations is not necessarily the date the condemnation petition was filed, valuation at the date of filing might have the effect of unjustly enriching the property owner for the condemning authority's unauthorized acts, if . . . the value of the property rights were appreciating, or of unfairly penalizing him, if property rights were depreciating, since regardless of type of market or inverse condemnation situation, the date of filing of a proper and complete condemnation petition would necessarily follow the date of the purportedly unauthorized or incomplete taking. Consequently, we believe that valuation of the defendants' property rights at the date of the filing of the condemnation petition works an injustice in situations where . . . the property owner must bring action to force the State to compensate him for the taking of his property rights.

We believe that the observation in *Department of Transportation v. Shaw* is consistent with the constitutional requirement that government must pay just compensation for its public appropriation of private property, that is, "The property of no person shall be taken or damaged for public use without just compensation therefor." Neb. Const. art. I, § 21. Consequently, we hold that when a government, before a condemnation petition is filed, exercises dominion over, or appropriates an interest in, a person's private property, a taking for a public use occurs and may be the subject of an inverse condemnation proceeding.

In Roses' case, the city obtained a judgment against Roses on July 15, 1980, and thereby achieved ownership of, or at least dominion over, Roses' real estate through the municipal assertion of a property right in derogation of Roses' title to their real estate. Also, as a governmental authority, the city obtained a permanent injunction to exclude Roses from using their real estate. Therefore, under the circumstances, we conclude that July 15, 1980, is the date when the city acquired

part of Roses' real estate for a public purpose—transmission of water through the subterranean main on Roses' property.

However, our conclusion concerning the date of taking in Roses' case does not require reversal. In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. See, *Plambeck v. Union Pacific RR. Co.*, 232 Neb. 590, 441 N.W.2d 614 (1989); *Bishop v. Farm Bureau Life Ins. Co.*, 228 Neb. 74, 421 N.W.2d 423 (1988).

> In a condemnation action there are two elements of damage: (1) market value of the land taken or appropriated; and (2) diminution in value of the land remaining, less special benefits. . . .
>
> . . . [A] condemnee is entitled to recover compensation for all damages caused by the taking. Damages recoverable in a condemnation case are determined by the extent of the taking and a condemner's rights actually acquired, not by a condemner's use resulting from less than full exercise of a right acquired by eminent domain. . . . In considering just compensation and the amount of damages to be paid a condemnee, a jury may consider factors which would influence a well-informed buyer in determining a price payable for the property at the time of the government's taking.

*Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 193-94, 376 N.W.2d 539, 549 (1985).

Even if the jury had been correctly instructed that the date of the city's taking was July 15, 1980, Rose has made no showing that prejudice resulted from the instruction that the date of taking was July 7, 1982. George Rose testified that there was no difference in the value of his property in 1980, when the city obtained its judgment against Roses, and 1982, when Roses filed their inverse condemnation petition. On the basis of Roses' evidence on value, the jury would have arrived at the same verdict regarding damages notwithstanding the discrepancy in the date for the city's taking. Thus, there is no merit in Rose's contention that prejudice resulted from the court's erroneous instruction regarding the date of the city's

taking.

Next, Rose contends that the trial court erred in refusing to give an instruction on the loss of access as an element of damage caused by the city's taking.

> To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the appellant was prejudiced by the court's refusal to give the tendered instruction; (2) the tendered instruction is a correct statement of the law; and (3) the tendered instruction is warranted by the evidence.

*Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 853, 438 N.W.2d 485, 491 (1989).

Regarding the claim of prejudice from an instruction given or a court's refusal to give a tendered instruction, the given instructions must be read conjunctively rather than separately in isolation. If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning instructions and necessitating a reversal. *Zeeb v. Delicious Foods*, 231 Neb. 358, 436 N.W.2d 190 (1989); *Getzschman v. Miller Chemical Co.*, 232 Neb. 885, 443 N.W.2d 260 (1989); *State v. Dondlinger*, 222 Neb. 741, 386 N.W.2d 866 (1986). See, also, *State v. Pierce*, 231 Neb. 966, 975, 439 N.W.2d 435, 443 (1989): "All instructions, read conjunctively, must correctly state the law, adequately state the issues, and not mislead the jury."

In Roses' trial, the jury viewed the subject property after George Rose had testified about the limited access and its effect on Roses' real estate, that is, the restricted access rendered Roses' real estate virtually worthless or with little value in the eyes of the prospective purchaser. In an eminent domain proceeding, when a jury is permitted to view the premises involved in the proceeding, the jury's observation is evidence which a jury may consider with other relevant evidence in arriving at a verdict. *Zwygart v. State*, 230 Neb. 128, 430 N.W.2d 301 (1988); *Bentz v. Nebraska P.P. Dist.*, 211 Neb. 844, 320 N.W.2d 763 (1982). Although the court's instruction did not specifically refer to loss of access as a factor in Roses' damages, the jury was told to determine damages on the basis of an award

which would "justly compensate" Roses in view of every "non-speculative element of inconvenience, annoyance, and disadvantage" which would "influence a purchaser's decision to buy [Roses'] property or pay a certain amount for it."

Under the circumstances, when the instructions given by the trial court are read conjunctively, especially in the light of the jury's viewing of Roses' real estate and the city's water main site, we find no prejudicial error in the trial court's refusal to give Roses' tendered instruction regarding loss of access as a factor affecting damages recoverable by Roses in their inverse condemnation proceeding.

## EXCLUSION OF TESTIMONY ON DIRECT EXAMINATION

Rose asserts that the trial court erred in refusing to allow George Rose's testimony, on direct examination, regarding loss of access to Roses' real estate. However, on rebuttal George Rose did testify about restricted access to the remainder after the city's acquisition of the site for its water main. Rose does not contend or demonstrate that George Rose's testimony on rebuttal was different from the testimony which the court excluded during his direct examination. In a civil case, to constitute reversible error contemplated in Neb. Evid. R. 103(1) (Neb. Rev. Stat. § 27-103(1) (Reissue 1985)), admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. See *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 414, 390 N.W.2d 487, 494 (1986). In *Lautenschlager v. Lautenschlager,* 134 Neb. 577, 581-82, 279 N.W. 200, 202 (1938), this court stated:

It is but the statement of a truism to say that in a trial to the court where evidence is excluded erroneously, but where the same evidence is elicited from the same witness and admitted later on in the trial of the case and is fully and completely presented, error cannot be predicated on such erroneous rejection. The principle controlling this situation has been before this court on a number of occasions and the following pronouncements have been made: Error in excluding evidence is cured by its

subsequent admission.

See, also, *Gugelman v. Kansas City Life Ins. Co.*, 137 Neb. 411, 413, 289 N.W. 842, 843 (1940): " 'Alleged error in the exclusion of offered testimony is of no avail if the same testimony, or testimony to the same effect, had been, or was afterwards, allowed to be given by the witness.' " (Quoting from *Union P. R. Co. v. Evans*, 52 Neb. 50, 71 N.W. 1062 (1897).) Consequently, alleged error in excluding a witness' testimony is cured when the initially excluded testimony is later elicited through the same witness. Rose has not shown prejudicial error in the trial court's refusing to allow George Rose's testimony during direct examination on the subject of restricted access for the remainder of Roses' real estate.

## INTEREST AND FEES

Finally, Rose contends the trial court erred in the amounts awarded as fees for Roses' attorney and expert witness and, further, that the court erred regarding interest on Roses' recovery through the eminent domain proceedings. However, nowhere in Rose's brief is there any discussion regarding the alleged errors concerning fees and interest. Neb. Ct. R. of Prac. 9D(1)(d) (rev. 1989) provides, "[C]onsideration of the case will be limited to errors assigned *and discussed.*" (Emphasis supplied.) "To be considered by this court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred." *Fee v. Fee*, 223 Neb. 128, 134, 388 N.W.2d 122, 126 (1986). See, also, *Bohaty v. Briard*, 219 Neb. 42, 361 N.W.2d 502 (1985) (argument is an effort to establish belief by a course of reasoning). Because Rose has failed to discuss the errors regarding fees and interest, we will not consider these errors alleged by Rose but not argued in Rose's appellate brief.

Therefore, the judgment of the district court is affirmed in all respects.

AFFIRMED.