W. ALBERT RICE, APPELLEE, v. AMERICAN PROTECTIVE HEALTH & ACCIDENT COMPANY, A CORPORATION, ET AL., APPELLANTS.

59 N. W. 2d 378

Filed June 26, 1953. No. 33319.

*Edwin F. Dosek* and *Chambers, Holland & Groth,* for appellants.

*W. W. Nuernberger* and *Perry & Perry,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action at law by W. Albert Rice, plaintiff and appellee, against American Protective Health & Accident Company, a corporation, and Lincoln Bonding & Insurance Company, a corporation, defendants and appellants, on a health and accident insurance policy issued to the plaintiff by the first named defendant, which for convenience will be referred to hereinafter as the insurance company. The liabilities under the policy were assumed by the second named defendant, which hereinafter if reference to is required will be referred to as the bonding company, hence the action is against the two defendants. The propriety of the joinder is not brought into question. The action was for benefits claimed to be due under the policy.

Issues were joined and the cause was tried to a jury.

A verdict was returned in favor of plaintiff for $2,021.18. Judgment was rendered on the verdict and in addition plaintiff was awarded an attorney's fee in the amount of $469.55.

A motion for new trial was duly filed which was overruled. From the judgment and the order overruling the motion for new trial the defendants have appealed.

The brief of appellants contains nine assignments of error. Following a sufficient statement of the issues to present an intelligible consideration of the questions involved the assignments of error, to the extent necessary to consider them herein, will be considered in the order of convenience.

On April 12, 1950, the insurance company issued to plaintiff a contract of insurance which among other things insured the plaintiff against loss of time resulting from bodily injuries and also from sickness or disease.

Regarding sickness or disease indemnities the contract contains the following provisions:

"If such sickness shall confine the Insured continuously within doors for one day or more, the Company will pay - One hundred fifty and no/100—DOLLARS per month, beginning with the first medical treatment during confinement, but not exceeding sixty consecutive months for any one sickness, provided the Insured is under the regular and personal attendance of a licensed physician, surgeon, osteopath or chiropractor."

"If such sickness shall prevent the Insured from attending to a substantial part of his duties essential to his occupation or following a period of confining disability, the Company will pay, beginning with the first medical treatment during disability, for one day or more, not to exceed three consecutive months at the rate of fifty percent (50%) of the amount payable for confining sickness, provided the Insured is under the regular

and personal attendance of a licensed physician, surgeon, osteopath or chiropractor."

Regarding the definition of certain conditions as disease or sickness the contract contains the following:

"Disability or loss caused by ulcers, vertigo, lame or sprained back, overexertion, overheating, sunstroke, hernia, lockjaw, or any injury complicated with disease, shall be considered as a disease notwithstanding the original cause of such disability or loss, and settlement shall be made accordingly."

The petition alleges that on January 14, 1951, while the contract was in full force and effect, plaintiff became afflicted with sudden pain which disabled and has completely incapacitated him for the performance of his business of farming and ranching. The evidence conclusively discloses the condition from which the pain and disability flowed was in the lower back or lumbarsacroiliac region and of course that there was lameness of the back. Thus within the meaning of the contract the claimed disability was on account of sickness or disease.

The petition further sets forth that claim was made for disability benefits but none were ever paid.

Action was then started and in the petition plaintiff claimed that he was entitled to $150 a month for the then period of his disability or $1,950.

In answer to the petition the defendants admitted the issuance of the contract of insurance. They denied generally the allegations of the petition. Then as an affirmative defense they alleged that in the application for the insurance contract the plaintiff made certain answers to questions asked which were material to the risk here which were willfully and knowingly false, thus the defendants were not liable for the payment of the benefits claimed.

The pleaded affirmative defense was by reply denied by the plaintiff.

At the close of plaintiff's evidence the defendants

moved for a dismissal on the ground that there was a total variance between the pleadings and proof. The motion was overruled. By the first assignment of error this question is presented to this court.

The point of the motion is that the claim under the pleadings is for indemnity on account of sickness or disease whereas the evidence supports a claim for accidental injury.

The assignment is without merit. By the terms of the contract of insurance heretofore quoted and as already pointed out herein in this opinion the plaintiff was required to treat and regard his condition as a disease or sickness and not as an accidental injury.

As pointed out the answer interposed a defense that the terms of the contract were not enforceable for the reason that the plaintiff gave false answers to questions regarding matters material to the risk. The court rejected this defense and refused to submit it to the jury. On the contrary the court by instruction No. 7 told the jury that the contract was in full force and effect. By their second assignment the appellants assert that this was error. The questions and answers were as follows: Q. "Are you now in good health?" A. "Yes" Q. "Are you maimed, crippled, or deformed in any way?" A. "No."

There can of course be no doubt that these questions and the answers thereto were material to the risk, but to defeat the contract they must have been false. There is no evidence in the record to indicate that these answers were knowingly or willfully false or even false. The second assignment of error is without merit.

The third and fourth assignments of error are of such similarity that they will be treated as one. Their effect is to say that the court in its instructions failed to properly define confining sickness.

From the statement hereinbefore made of the case including the quotations from the contract of insurance and the verdict and judgment it becomes apparent that

a proper legal definition of confining sickness is of vital concern. The action was predicated upon confining sickness and the verdict and judgment were for that character of sickness for the entire period for which recovery was allowed.

Such a definition is of further vital concern for the reason that the contract distinguishes confining sickness and non-confining sickness and provides for each, but the period of coverage and the rate of indemnity are different. It is disclosed by the quotations from the contract herein that the maximum period for confining sickness is 60 months and the rate of indemnity is $150 a month, whereas the maximum period for non-confining sickness is 3 months with the monthly rate one-half of that payable for confining sickness.

The definition of confining sickness which was given to the jury is the following from instruction No. 6:

"Ordinarily, terms in insurance policies relative to illness or disability must be given a liberal construction; and as far as applicable to this case the term, 'sickness which shall confine the insured continously (sic) within doors,' does not necessarily mean that the insured must have been constantly confined within his home or within some other building, that is, in a state of complete helplessness before he is entitled to the benefits of insurance involved herein.

"If the evidence shows, by a preponderance thereof, that the plaintiff became ill, and as a direct result of such illness the plaintiff was unable to do all the substantial and material acts necessary to the prosecution of the insured's business or occupation in his customary and usual manner, and further, that such inability was continuous during all times involved herein, then if you so find, plaintiff was continuously confined within doors under the terms of the policy involved herein, although you may find that he attempted at irregular times to perform certain duties relative to his business."

The portion of this definitive statement contained in

the first paragraph of the quoted portion of the instruction, it will be observed, is negative in character and as to it no fault may be found. It finds full support in Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780.

The same thing however may not be said of the next or positive paragraph of the definition. There the jury was told that if the illness was such as to cause the plaintiff to be unable to do all of the substantial and material acts necessary to the prosecution of the insured's business or occupation in his usual and customary manner and that if such inability was continuous during all of the times involved, then plaintiff was confined within doors under the terms of the policy.

What the instruction did was to apply to the confining illness the proper definition of total disability under an accidental injury policy of insurance. Mc-Cleneghan v. London Guarantee & Accident Co., 132 Neb. 131, 271 N. W. 276.

Confining illness, to the extent reasonably possible, is defined and considered at length in Mutual Benefit Health & Accident Assn. v. Milder, *supra*. Numerous other cases are cited therein supporting the conclusion reached and they will not be repeated here.

In that opinion, among other related statements with regard to contract provisions substantially the same as those being considered here, it was said: "Mere total and permanent disability of the insured by disease or illness is not sufficient. The contract makes total disability and total loss of time from sickness or disease which confines the insured continuously within doors and regular visits therein of the insured by a legally qualified physician an indispensable criterion of disability which entitles the insured to the maximum indemnity."

It should be pointed out that by the contract here under consideration it is required that there shall be regular and personal attendance of a licensed physician,

surgeon, osteopath, or chiropractor but there is no requirement that the attendance shall be at the place of confinement.

Also in the opinion in definition of confinement within the meaning of the contract, it was said: "The condition imposed by the contract that continuous confinement within doors with regular medical attendance is a requirement of recovery of maximum indemnity for total disability and total loss of time occasioned by illness or disease should not be literally but reasonably applied, and the insured is not thereby required to remain within doors constantly, but there must be a substantial confinement within doors and regular medical attendance therein by reason of the illness. There may be needful and beneficial interruption of the confinement with the approval and advice of his physician in attempts to restore the health of the insured, and there may be necessary deviation from confinement indoors on account of occurrences or emergencies over which he has no control, but this does not mean that the requirement of confinement within doors may be ignored or disregarded, and recovery had under this provision of the policy merely because insured is totally disabled and suffers a total loss of time."

Instruction No. 6 was prejudicially erroneous and on that ground the defendant is entitled to a reversal of the judgment herein.

By the fifth assignment the appellants substantially assert that the court erred by failure to instruct so as to allow the jury to determine in the light of the provisions of the policy whether the plaintiff had a confining or a non-confining illness or disease.

This of course, in the light of Mutual Benefit Health & Accident Assn. v. Milder, *supra*, and what has already been said herein, was error. It was the duty of the court to submit to the jury under appropriate instructions all issues presented by the pleadings and supported by evidence. Roby v. Auker, 149 Neb. 734, 32 N. W. 2d

491; McKain v. Platte Valley Public Power & Irr. Dist., 151 Neb. 497, 37 N. W. 2d 923; Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839.

By the pleadings and the litigated terms of the policy the character and quality of the plaintiff's condition was a basic issue.

The eighth assignment of error relates to the ruling of the court on an objection to a question propounded to plaintiff on cross-examination. The question, the objection, and the ruling are as follows: "Q—Albert, since January 14, 1951, how many days have you been confined to your home? MR. PERRY: I object to that as immaterial under the issues and not cross examination. THE COURT: Sustained."

In the light of the issues it is difficult to see how it could be concluded that the inquiry did not relate to a matter material under the issues. The basic matter for determination was that of plaintiff's confinement and the duration of such confinement. It is equally difficult to see how it could be concluded that the matter was not a proper subject of cross-examination. The testimony of the plaintiff as to the commencement of his condition and his conduct thereafter without question made of this a proper subject of cross-examination. The appellee in his brief does not seriously contend otherwise. His response is that the error may not be predicated upon the ruling since there was no offer to prove the facts sought to be elicited.

The rule relied on is stated as follows in In re Estate of Woodward, 147 Neb. 270, 23 N. W. 2d 75: "Ordinarily in order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited." See, also, Webber v. City of Scottsbluff, 150 Neb. 446, 35 N. W. 2d 110.

That rule is a valid one as applied to the proponent of a witness but it has no application where the question is on cross-examination and comes within the purview of

the material subjects inquired into on direct examination.

In Larson v. Hafer, 105 Neb. 257, 179 N. W. 1013, it was said: "When testimony is given by a witness on direct examination, from which an inference of fact arises favorable to the party producing him, anything within the knowledge of the witness tending to rebut that inference is admissible on cross-examination, and the opposing party is entitled to pursue that line of cross-examination as a matter of right." Also it was said: "A denial of that right of cross-examination, when the ruling is prejudicial, is sufficient ground for reversal."

In Langdon v. Loup River Public Power Dist., 142 Neb. 859, 8 N. W. 2d 201, it was said: "What the proponent of a witness may go into in chief, the cross-examiner may inquire into on cross-examination on the liberal terms extended to the cross-examiner, * * *."

The inquiry was proper and the court erroneously and prejudicially sustained the objection to the question propounded.

In the light of the determinations made upon the assignments considered herein, consideration of the other assignments is not required.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.