FRANKLIN M: PALMER, APPELLEE, v. GERALD R. MCDONALD, APPELLANT.

107 N. W. 2d 655

Filed February 17, 1961. No. 34864.

*Fraser, Wenstrand, Stryker, Marshall & Veach,* for appellant.

*Wear, Boland, Mullin & Walsh* and *A. Lee Bloomingdale,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Sarpy County by Franklin M. Palmer, plaintiff, against Gerald R. McDonald, defendant, to recover damages for injuries sustained because of the negligence of the defendant when his automobile collided with the plaintiff, a pedestrian. The cause was tried to a jury, resulting in a verdict in favor of the plaintiff. The defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was overruled and the defendant perfected his appeal to this court.

The plaintiff's petition alleged that on or about September 4, 1958, at about 5 p.m., the plaintiff was walking as a pedestrian from the west side to the east side of the paved street which runs generally in a north-south direction behind the building known as the Strategic Air Command Control Center at Offutt Air Force Base in Sarpy County (which will hereinafter be referred to as the headquarters building); that there was a large parking lot to the east of the headquarters building; that the street was undergoing heavy usage by pedestrians who were proceeding from the headquarters building to the parking area east of such building; that there were no marked crosswalk lines or lanes for use by pedestrians crossing this road, but by usage and

custom the plaintiff and numerous other pedestrians regularly utilized that road to cross from the headquarters building to the parking area; that this fact was well known by the defendant; and that there was a maximum speed limit of 10 miles an hour for vehicular traffic. The plaintiff further alleged that as he prepared to cross from the west to the east side of the road, there was located a long line of vehicles in a stationary position in the west half of the road; that prior to leaving the west curb of the road, the plaintiff ascertained that the southbound vehicles were in a stationary position and that there was ample opportunity and space for him to cross the west half of the road between the rear of a stopped southbound bus and a car that was southbound; that upon reaching a point approximately even with the east side of the bus, the plaintiff again made an observation to his right and left prior to entering onto the east half of the road, and ascertained that there was no north or southbound traffic located on the roadway which would constitute a danger to him; that thereafter the plaintiff proceeded into the road where he was struck by a northbound vehicle operated by the defendant; and that immediately prior to the happening of the collision, the defendant drove his car from its parking place in the parking area to the east of the road, turned his car to the north, and accelerated his car causing it to strike the plaintiff. The plaintiff then set forth in his petition several acts of negligence on the part of the defendant which the plaintiff claims constituted the proximate cause of his injuries, and prayed for damages.

The defendant's answer admitted the happening of the collision between his car and the plaintiff on September 4, 1958, which collision occurred immediately east of the headquarters building; specifically denied that the plaintiff was walking; alleged that said collision and resulting injuries and damages, if any, sustained by the plaintiff were through no fault or negligence on

the part of the defendant; and alleged that the plaintiff's negligence was the sole and proximate cause of the collision, which negligence was more than slight and directly contributed to and caused the accident.

The assignments of error necessary to consider in this appeal are that the trial court erred in overruling the defendant's motion for directed verdict at the conclusion of the plaintiff's case and at the conclusion of all of the evidence; and that the trial court erred in overruling the defendant's motion for a judgment notwithstanding the verdict.

The principal question presented on this appeal is whether or not the evidence establishes that the plaintiff was contributorily negligent in a degree sufficient to bar his recovery as a matter of law.

In determining the issues in this case, the following principles of law are applicable.

"A motion for a directed verdict or for a judgment notwithstanding the verdict admits, for the purposes of a decision of the motion, the truth of the material and relevant evidence on behalf of the party against whom the motion is directed, and he is entitled to have each controverted fact found in his favor and have the benefit of fair inferences deducible from the evidence." Spracklin v. Omaha Transit Co., 162 Neb. 351, 76 N. W. 2d 234. See, also, Jarosh v. Van Meter, *ante* p. 61, 105 N. W. 2d 531.

"In every case, before the evidence is submitted to the jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Hickman v. Parks Constr. Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040. See, also, Jarosh v. Van Meter, *supra*.

In a case where a motion for a directed verdict has been made at the close of all of the evidence, which

motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict. See, Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144; Jarosh v. Van Meter, *supra.*

"Where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination." Thomas v. Owens, 169 Neb. 369, 99 N. W. 2d 605.

The record shows that Bernhard Muhsemann testified that he was an airman first class stationed at the Offutt Air Force Base on September 4, 1958, and was assigned to a police squadron; that part of his duties required him to investigate accidents that occurred on the base; that he was familiar with the area where the collision occurred between the defendant's car and the plaintiff, a pedestrian; that the rear of the headquarters building faces to the east; that the area east, at the rear of the building, contains a large parking lot running generally in a north-south direction with numerous lines painted on the pavement to indicate parking stalls; that approximately 400 cars park in this parking area; that directly north of the headquarters building there is another parking lot that holds approximately 250 cars; and that in all, there is parking space for approximately 650 cars belonging to persons working at the headquarters building. He further testified that there is a north-south road which lies between the rear of the headquarters building and the east parking lot; that this road is approximately 30 feet wide from curb to curb; that about 95 percent of the people working in the headquarters building get off duty at 5 p.m., and leave the building; that the speed limit on the road between

the headquarters building and the parking lot was 10 miles an hour on September 4, 1958; and that there were signs posted to that effect in that vicinity as well as regulations such as a daily bulletin put out by the provost marshal's office to the effect that pedestrians had the right-of-way in that area over vehicles. There were no painted crosswalks in this area. There were three entrances on the rear of the headquarters building which open out to the parking lot. A large percentage of the pedestrians walk across the road to get to their cars. This witness further testified that he received a call that an accident had occurred at gate No. 2, which is called the pedestrian gate. He and a flight sergeant arrived at the scene of the accident shortly after it occurred. He stated that it was more or less dusk, raining, and drizzling, and that the ground was wet at that time. Arriving at the scene of the accident he saw a pedestrian sitting in the road, and a 1953 4-door Plymouth car which belonged to the defendant was stopped in the immediate vicinity. He made an investigation and found skid marks approximately 20 feet in length from the rear of the defendant's car. There was a crack in the windshield of the defendant's car. The base ambulance arrived and the plaintiff was taken to the base hospital.

On cross-examination this witness testified that he did not see the accident; that there was a line of traffic stopped at the west curb of the road; that when he arrived at the scene of the accident the plaintiff was seated on the road on the left side of the defendant's car which was facing north; and that the front end of the car was not more than 4 feet south of the gate shack west of the roadway at the rear of the headquarters building.

The plaintiff offered in evidence the deposition of Elizabeth Borsen. On September 4, 1958, she was employed and had worked in the headquarters building. On the day in question she left work at approximately 5 p.m., and walked out the rear of the headquarters building to proceed to the east parking lot where the

car she was to ride home in was parked. The driver asked her to wait until he got the car. People were "pouring out" of the headquarters building to go home. She described the weather as "lousy." She waited between the second and third crossdrives on the east side of the road in question, immediately adjacent to the parking lot. She further stated that there were 10 or 12 entrances to the parking lot; that she noticed the defendant's car come out of the southernmost entrance of the parking lot and turn north on the north-south road; and that she watched the defendant's car as it proceeded north, and in her opinion the defendant "put on a little bit too much speed." She estimated the speed of the defendant's car as he drove north to be 20 miles an hour. She continued to watch the defendant for "a little bit." She turned her head to the south to see if the driver of the car she was to ride in was coming, then she looked north again and saw the plaintiff "sort of up against or on the fender of a car that was parked" on the west curb facing south, and the plaintiff fell to the ground. She saw the defendant "fly" out of his car, having applied his brakes and stopped his car in about a car length. She heard no horn sounded by anyone prior to the accident. When the defendant's car came to a stop, the rear of his car was either even with the plaintiff or north of him.

On cross-examination this witness testified that while she was standing on the east curb watching for her ride she observed an Air Force bus stopped on the west side of the street facing south, 20 or 25 feet north of where she was standing, and there were two or three southbound cars stopped behind or to the north of this bus. Her first impression was that she saw the plaintiff's body either up against the fender or on the fender of the car parked behind the bus.

The plaintiff read into evidence certain excerpts from the defendant's deposition, that there were cars proceeding south in the area where the accident occurred.

The southbound traffic was at a halt along the west side of the road, due to the congestion at the time of the employees quitting work at the base. He judged that the distance from the left side of the Air Force bus to the left side of his car would be 2 feet. He first saw the plaintiff at the time of impact. At that time the plaintiff was crossing the road from the west side to the east side.

The plaintiff testified that he was employed as chief of the policy and procedures branch in the procurement division at the Air Force Base. On the day of the collision, he had driven his car to work and had parked it in the parking lot immediately to the east of the headquarters building. He estimated that the parking lots held 400 or 500 cars, and that 2,500 people worked in the headquarters building, and most of them left their work at 5 p.m. He testified that pedestrians had to walk across the road, and there were no designated places to walk, they could walk where they could find room between cars. Pedestrians moved directly east in going from the headquarters building to the parking lot. The plaintiff further testified that he left the rear of the headquarters building, walked to the east some distance and then turned and walked north to the checkpoint where he showed his badge to the officer stationed there. He then walked south on the sidewalk along the west side of the road for a distance of approximately 50 feet where he found an opening in a line of cars which were stopped approximately 2 feet from the curb. He saw an Air Force bus, and the body portion of that bus was about 8 feet in width. This bus was stopped about 5 feet from the west curb. He trotted along from the check station down to a point where the bus was standing. As he moved along the west sidewalk, he observed the road and saw no cars coming north on the road. When he reached a point where the bus was stopped, he found that there was an opening of approximately 4 feet between the rear of the bus and

the car standing immediately behind the bus. When he reached the east side of the bus, he looked to the south and saw that there were no northbound cars on the road. He looked to the north, and seeing no southbound traffic moving he took a step out onto the road, glanced to the south as he did so, and the defendant's car was upon him. His impression was that the front portion of the defendant's left front fender struck the inner side of his left leg above the knee and on part of the knee. He was also injured on his right side where it struck the windshield of the defendant's car. When he took the step, he saw the defendant's car, and the collision occurred simultaneously. The defendant's car was not over a foot away from him when he saw it before the impact. He believed that almost simultaneously with the impact he heard a little "peep," and assumed that it was from the horn of the car behind the bus. He did not recall hearing any horn sounded by the defendant's car. The first thing he could remember after the accident was that he was lying on his back in the road, very close to the left side of the car which was stopped behind the bus. He remembered that after the collision someone came up to George Smith, the driver of the car that was stopped behind the bus, and Smith said to that person: "you know you were driving awfully fast." He assumed that Smith was talking to the defendant, but was not sure, as he did not see the man Smith was talking to.

On cross-examination this witness testified that as he walked toward the street, cars southbound were built up solid along the west curb. As he walked down the sidewalk looking toward the south and over the roadway, he had a fairly good view of the roadway, but the bus obstructed that view somewhat. As he walked south down the sidewalk, he continued to look to the roadway and to the south to see if there were any cars proceeding north on the road. He was trotting for 50 feet until he got just to the rear of the bus, and

was walking when he stepped off the curb and put his hand on the right fender of the car to his left, which was the car behind the bus, and was Smith's car. He then passed between that car and the bus, and looked to the left edge of the bus. He looked to the south and saw no traffic approaching, and looked to the north and saw no traffic approaching from that direction. He took one step, glanced back to the south, and the defendant's car was within a foot of him. When he paused at the east edge of the bus and looked to the south he was able to see probably 200 feet to the south, and at that time he saw no northbound cars.

Lieutenant Colonel Ruth McCraw testified that she was stationed and worked in the headquarters building at Offutt Air Force Base; that she left work at 5 p.m., on September 4, 1958; and that when she left the building with her superior officer to go to her car parked in the officer's parking lot directly behind the building, it was drizzling rain. When she got her car, she came out of the parking lot and was headed south to go around the headquarters building and out toward the Strategic Air Command gate. Immediately after leaving the parking lot she was stopped in the southbound lane of traffic on the north-south road. There were a number of cars in front of her, including an Air Force bus in front of the car preceding her car. She observed the plaintiff emerging between the back of the bus and the car preceding her car. The plaintiff was in a running trot going into the street from between the bus and the car. The plaintiff was looking in her direction, and did not hesitate or stop at any time. She saw the actual impact. The plaintiff hit the defendant's car sideways, just to the rear of the left front fender of the defendant's car which was northbound. The plaintiff's head hit the windshield of the defendant's car. The plaintiff fell to the ground between the two automobiles, right in the center of the road. This witness jumped out of her car and went to the plaintiff's aid.

She held his head in her lap. The defendant's car stopped "right there" in the road. She was not particularly looking to see a car coming, and as she saw the plaintiff crossing the road she saw the defendant's car coming up the road, and then she saw the impact. The plaintiff was directly centered in the roadway in front of the left wheel of the Smith car which was directly behind the bus, and next to the front side of the car that he hit. She believed the defendant stopped his car "dead still." At no time up to and after the impact did she hear any squealing of brakes or the sounding of a horn. While she was assisting the plaintiff after the collision, she heard the defendant say: "I am sorry, Mister, I didn't see you."

On cross-examination this witness testified that the impact took place a few feet in front of her car and to the left of it; that it would not have been possible, in her opinion, for the plaintiff to have been hit by the front part of the defendant's car because she saw his glasses fly back toward and onto the hood of the Smith car in front of her car; and that she saw his head hit the windshield, which could not have happened if the plaintiff had been in front of the defendant's car.

The deposition of the defendant was read into evidence. He testified that he was involved in the accident on September 4, 1958, between his car and a pedestrian, which took place back of the headquarters building at Offutt Air Force Base between 4 and 5 p.m.; that he had been at work and was leaving for home; that he was told there was a speed limit of 15 miles an hour and that his speed at the time of the accident was less than 10 miles an hour; that he was proceeding north, there were no cars immediately ahead of him, and he did not remember if there were any cars immediately behind him; that there was traffic proceeding south in the area where the accident happened; that the southbound traffic was "full" along the west side of the road, and the cars at that point were stopped

due to the traffic congestion; and that he was proceeding north from the east parking lot and, as he approached the gate guard, the plaintiff ran from between the southbound bus and the George Smith car. The plaintiff struck the left front fender of the defendant's car right ahead of the windshield, that is, the plaintiff ran into the left side of the defendant's car. His car did not travel over 2 feet after the accident, after he had applied the brakes. He testified that he saw the plaintiff just at the time of the impact; and that the plaintiff was trotting, and could not stop his forward movement.

James W. Nanney testified that on September 4, 1958, he was assigned to an air police squadron, and part of his duties was to investigate accidents; and that he made an investigation of an accident on September 4, 1958, accompanied by airman first class Muhsemann, and was told to go to gate No. 2. Upon arrival at the scene of the accident he saw someone lying in the road in the northbound lane, just east of the guard control point. He noticed a crack in the windshield of the defendant's car. This witness further testified that neither he nor Muhsemann saw the collision and therefore did not know what position the plaintiff was in, nor the position of the defendant's car at the time of the impact. He further testified that the Air Force bus was approximately up to 7½ feet in width, and the rear of the bus was a few feet south of the plaintiff as he was lying in the roadway.

It was stipulated that the testimony of George Smith, taken by interrogatories propounded in behalf of the defendant, should be received in evidence. This witness testified that he was employed at the Strategic Air Command, Offutt Air Force Base on September 4, 1958, and witnessed a collision between an automobile and a pedestrian; that he was in his car immediately behind the Air Force bus proceeding south in the line of traffic enroute home; that it was drizzling slightly at the time

of the accident; that when he saw the plaintiff, he was just passing the sentry box and through the security gate across the sidewalk between this witness' car and the bus stopped ahead of him; that the entire south-bound line of traffic was stopped; that he saw the plaintiff trotting across the sidewalk between his car and the parked bus; that the plaintiff had his head down, apparently to avoid the rain; that the plaintiff did not hesitate nor look in either direction up or down the road prior to leaving the sidewalk; and that the plaintiff was in a slow trot heading east across the street. This witness stated that he observed the defendant's car proceeding north; that the speed of the defendant's car was approximately 10 or 15 miles an hour; that this witness tapped his horn in an effort to attract the plaintiff's attention to the oncoming traffic, but the plaintiff did not heed the warning and by the time the plaintiff reached the center of the roadway the defendant's car had reached the opening between the bus and this witness' car, and the plaintiff ran into the left front fender of the defendant's car; that the point of impact occurred about 4 feet in front of and to the left of this witness' car; and that there was about 2 feet of clearance between the two lines of traffic.

The plaintiff's evidence is to the effect that when he halted at the left edge of the bus, he looked to the south and had a view of 200 feet or more and did not see any cars approaching from that direction. He then took one step, and almost instantaneously with his taking of the step, the collision occurred. The testimony of two eyewitnesses, who were in a good position to see the accident and did see it, was positive that there was no hesitation on the part of the plaintiff; that he was on a trot; and that he did not look to the right before emerging out from behind the Air Force bus. From the testimony of the two eyewitnesses, it is apparent that the defendant's car had to be at the place of impact and in plain sight. It was northbound, and its left side was

some 2 feet from the side of the Air Force bus at the time of the collision.

The following, under the facts in the instant case, are applicable.

"When one, being in a place of safety, sees or could have seen the approach of a moving vehicle in close proximity to him and suddenly moves from a place of safety into the path of such vehicle and is struck, his own conduct constitutes contributory negligence more than slight in degree, as a matter of law, and precludes recovery." Gade v. Carlson, 154 Neb. 710, 48 N. W. 2d 727.

The fact that there was no crosswalk across the north-south road to the parking lot to the east, and that pedestrians had the right-of-way over vehicles, does not dispense with the rule announced in Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436, as follows: "One who attempts to cross a street between intersections without looking is guilty of such negligence as will bar a recovery as a matter of law. If he testifies that he did look, it is implied that he looked in such a manner that he would see that which was in plain sight, unless some reasonable excuse for not seeing is shown."

While the plaintiff contends that the defendant was approaching from the south on the wrong side of the street, he did testify that when he moved out to the left side of the bus and looked to the right and left, he could see down the street beyond the bus for a block, or at last 200 feet or more, and saw no vehicles approaching; that he then looked left, took one step, looked up, and almost simultaneously saw the defendant's car; and that the front part of the left fender of the defendant's car came in contact with his body.

The rule with reference to cause which will afford the basis for an action for damages for negligence is that the act must be a proximate cause of the accident and the ensuing injuries. See Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb. 777, 49 N. W. 2d 619.

Under the factual situation in the instant case the negligence of the defendant, if any, was not the proximate cause of the accident. If the defendant's car was over the center line of the road before or at the time of the accident, such would not constitute the proximate cause of the accident under the factual situation in this case.

We conclude that the trial court erred in submitting the case to the jury. The plaintiff's own negligence, under the facts shown, precludes the recovery on his part as a matter of law. The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

ELLWOOD B. CHAPPELL and PAUL E. BOSLAUGH, JJ., not participating.