FREDERIC BECK, APPELLEE, v. HARRY TRUSTIN, APPELLANT.

131 N. W. 2d 425

Filed November 20, 1964. No. 35704.

Herbert E. Story and Robert C. Oberbillig, for appellant.

Schrempp, Lathrop & Rosenthal, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

Spencer, J.

This is an action for damages brought in the district court for Douglas County, Nebraska, by Frederic Beck, plaintiff and appellee, hereinafter referred to as plaintiff, against Harry Trustin, defendant and appellant, hereinafter referred to as defendant, for injuries sustained because of the negligence of the defendant when his automobile collided with the plaintiff, a pedestrian.

The cause was tried to a jury and a verdict was returned for the plaintiff. Defendant filed a motion for judgment notwithstanding the verdict, and for a new trial. This motion was overruled and the defendant perfected his appeal to this court.

We detail only sufficient of the facts necessary to an understanding of the questions involved. At approximately 5:45 p.m. on November 22, 1961, plaintiff, who had alighted from a city bus at the corner of Nicholas Street and Happy Hollow Boulevard, was walking in an easterly direction on the south side of Nicholas Street toward his home, which is located east of the intersection of Fifty-second and Nicholas Streets. Plaintiff at that time was wearing a blue and white checked overcoat and no hat. The defendant at the time of the collision was driving his automobile south on Fifty-second Street on his way to his home, which is located south of Dodge Street. He had come off the boulevard and turned south of Fifty-second Street at Western Avenue, which he estimates to be 220 or 230 feet north of Nicholas Street.

Plaintiff testified that when he reached the southwest corner of Fifty-second and Nicholas Streets, he looked to the north to see if there were any cars coming. He saw the lights at the Fifty-second Street and Western Avenue intersection, but saw no cars in the block which were coming his way. He did not hesitate or break his pace but kept right on walking. He stepped off the curb and then looked to the south and saw a car coming but judged it to be far enough away to permit him to cross safely. He then testified: "Q. Then just

tell the ladies and gentlemen of the jury what happened from that point on, sir. A. Well, I kept walking across the street at a normal pace; and as I neared the center of 52nd Street, I started turning to look to the north. I saw out of the corner of my eye some lights of a car; and then before I could do anything, I was struck. The car came so fast that there wasn't anything I could do to get away from it." At that time he testified he was about 1½ feet from the center of the intersection in what would be the crosswalk through the intersection connecting the east and west sidewalk on the south side of Nicholas Street. The sidewalk area was 10 feet south of the street.

The defendant testified that it was a "murky dark" evening and he had his lights on as he approached the Fifty-second and Nicholas Streets intersection. There were some lights shining and he realized it was a car approaching but paid no attention to it. His testimony is as follows: "Q. And tell us now just what happened as you came up to that intersection. A. Well, as I say, it was murky and I was—as I say, I was traveling 20 to 25 miles per hour. When I got to the intersection, right into the intersection, I saw a figure. Well, to me it looked like he leaped, and I immediately slammed my brakes on and pushed my horn at the same time—both feet because I wanted to stop that car—and I struck this man just about at the sidewalk that crosses to the east and west on the south side of Nicholas. Q. And what happened to your car then? A. Well, I must have slid 10 or 15 feet, but my car was absolutely dead when I hit him. Just as I hit him it stopped right there. I jumped out around, and I—naturally I gathered the fellow up in my arms, and I realized I didn't dare to move him because I didn't know what had happened. * * * Q. Well, did you see him when he was on the curb? A. No. You see, he seemed to have leaped. I don't know whether he was running, I didn't see him come there; but as he came off that curb, he seemed to have

leaped across that—off that curb; so I didn't see him at all until he was right in the middle of those lights. And he seemed to be not on the ground, you see. What I mean, in other words, his feet were off the ground."

An investigating officer who was called to the scene testified there were 32 feet of skid marks behind the car, which had passed through the intersection so that the rear end covered the south crosswalk. He testified the car was 20 feet in length and that he found the plaintiff in the street 30 feet south of the crosswalk. An eyewitness testified that after being struck, the plaintiff came to rest approximately 10 feet in front of the car. The officer, who testified that he recognized the defendant, who was the president of the Omaha city council, took no pictures although he had a camera with him, and made no drawing to scale at the scene of the accident. He also testified that he examined the headlights of the defendant's car and they were clear.

The driver of a car approaching from the south proceeding north observed the plaintiff when he was leaving the curb in the crosswalk and at that time this witness was at least 100 feet south of the crosswalk. He testified the plaintiff was walking at a normal pace across the intersection. When the plaintiff stepped into the street, he could not see exactly where the defendant's car was, but then placed it north of Nicholas Street and not quite to the intersection. He saw the defendant's car strike the plaintiff. The left front headlight of the car struck the plaintiff, who was almost to the center of the street. He looked at the headlights of the car after the impact, and in his estimation they were foggy, and he could have called the police officer's attention to them but didn't remember. He did not hear any horn sounded before the impact. This witness testified that after the impact he heard the plaintiff tell the defendant that he did not look where he was going.

Defendant alleges nine assignments of error. Assignments Nos. 1 and 2 involve the overruling of motions for

directed verdict made during the course of the trial; No. 3 involves the overruling of the motion for new trial; and No. 4 involves the overruling of defendant's motion for judgment notwithstanding the verdict. These are all related and will be covered by the general discussion. Assignments Nos 5, 6, 7, and 8 complain of the giving of instructions Nos. 2, 5, 10, and 11 respectively. Assignment No. 9 involves instructing on charges of negligence, which were stricken from the plaintiff's petition upon the motion of the defendant, and is included in the objection to the trial court's instruction No. 5.

In every case, before the evidence is submitted to the jury there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. See Hickman v. Parks Construction Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040.

A motion for a directed verdict, or for judgment notwithstanding the verdict, admits, for the purpose of decision on the motion, the truth of the material and relevant evidence of the party against whom the motion is directed, and he is entitled to have every uncontroverted fact found in his favor, and to have the benefit of every inference deducible from the evidence. See Palmer v. McDonald, 171 Neb. 727, 107 N. W. 2d 655.

When different minds may reasonably draw different conclusions from the same facts as to whether or not they establish negligence or contributory negligence, such issues should be submitted to the jury. Buie v. Beamsley, 171 Neb. 181, 105 N. W. 2d 738.

The defendant seriously contends that he was not guilty of any act of negligence which was the proximate cause of the injury. We said in Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531, 82 A. L. R. 2d 714, negligence, to be actionable, must be the proximate cause of the injury. We do not agree with defendant's conclu-

sion. As will be pointed out hereinafter, there was ample evidence from which the jury could find that the negligence of the defendant was the proximate cause of the injury to the plaintiff.

Defendant further argues that the plaintiff was guilty of contributory negligence more than slight as compared with any negligence proved against the defendant, and specifically contends that plaintiff's negligence was in failing to see the automobile of the defendant; in leaving a place of safety and placing himself in the path of the approaching automobile; and in exposing himself to an obvious danger which would have been apparent to him if he had looked.

We consider first whether the plaintiff was guilty of negligence more than slight in comparison with the negligence of the defendant. It is defendant's contention that plaintiff did not look to the north before entering the street. The plaintiff's testimony is unequivocal that he did. It is true he made statements on the day of the accident which tend to question his testimony, but this merely made it a jury question, and the jury must have accepted the plaintiff's version. The defendant further contends that the evidence is undisputed that the plaintiff did not look to the north after he had entered the intersection until he had proceeded almost to the center of the intersection where he was struck by the defendant's car. Is this negligence more than slight as a matter of law when compared with the negligence of the defendant? We determine under the facts in this case that it is not.

Section 35.16.010, city traffic code of the Omaha city ordinances, provides in part: " 'a) The driver of any vehicle shall yield the right of way to a pedestrian crossing the street within any marked crosswalk or within any unmarked crosswalk at the end of a block, * * *.' * * * 'h) Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway,

and shall give warning by sounding the horn when necessary.' "

The provisions of "a" above are substantially the same as those of section 39-751, R. S. Supp., 1963, covering the rights of pedestrians at intersection crossings. The evidence of the only disinterested witness places the defendant's automobile north of the intersection when the plaintiff stepped off the curb. Certainly the jury, under the evidence, could find that plaintiff was in the crosswalk and had the right-of-way when the defendant entered the intersection.

Defendant argues that the factual situation in Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144, is similar to the case at bar, and the rules therein enunciated are controlling. We do not accept the defendant's premise that the facts are similar. That case involved a streetcar and a pedestrian. The streetcar, which was going 7 to 10 miles an hour, stopped 46 feet from the east crosswalk which plaintiff was supposed to be crossing. Disinterested witnesses testified that the plaintiff was walking in a diagonal direction from northeast to southwest.

Defendant also calls our attention to Nichols v. McArdle, 170 Neb. 382, 102 N. W. 2d 848, and Wolstenholm v. Kaliff, 176 Neb. 358, 126 N. W. 2d 178, both of which involved the collision of vehicles in intersections. They are not applicable herein because in the instant case the plaintiff, a pedestrian, under the facts as we are required to view them, clearly had the right-of-way. The question here is whether plaintiff can be charged with negligence as a matter of law because he did not waive his right-of-way. This is inherent in the defendant's contention that the plaintiff had a duty to look and to see the defendant's car, which defendant contends had to be in plain sight.

Defendant relies on Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531, 82 A. L. R. 2d 714, and Palmer v. McDonald, 171 Neb. 727, 107 N. W. 2d 655, which were

pedestrian cases. In both of those cases, we held that the plaintiff, in stepping in front of an oncoming car, was contributorially negligent as a matter of law. In both of those cases, however, an attempt was made to cross a street at an area between intersections and not in a crosswalk provided for the purpose of crossing. Those cases are controlled by Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436, which has no application herein.

The facts in the instant case bear more resemblance to those in Buie v. Beamsley, 171 Neb. 181, 105 N. W. 2d 738, than to those in the cases cited by the defendant. Both the Buie case and the instant one involve a pedestrian in a crosswalk. Plaintiff in that case turned when she heard the brakes of the truck applied. She testified she could have stopped at any time before she reached the north driving lane. The trial court on that testimony directed a verdict against the plaintiff. We reversed the judgment and remanded the cause because the question of contributory negligence was one for the jury where the plaintiff had the right-of-way but may not have acted as the ordinarily prudent person.

As pointed out in Costanzo v. Trustin Manuf. Corp., 176 Neb. 136, 125 N. W. 2d 556, before a verdict can be directed against a motorist for failing to see an approaching vehicle at a nonprotected intersection, the position of the approaching vehicle must be undisputedly located in a favored position. Certainly, a pedestrian with a right-of-way is in a much stronger position, and if his right-of-way is to be protected, we cannot permit the failure to see an approaching car or a misjudgment as to its speed to be the sole criteria. The failure of a pedestrian with the right-of-way to see an approaching car within the limit of danger or to misjudge its speed does not ordinarily constitute contributory negligence as a matter of law. It is no more than evidence from which a jury may find contributory negligence.

In Cawthra v. Shackelford, 176 Neb. 147, 125 N. W. 2d 186, a case involving a collision between an automo-

bile and a tractor, we held: "Whether a party failed to look or looked and failed to see a motor vehicle when it was within the limit of danger is a question for the jury, except in those cases where the evidence is so conclusive that the approaching motor vehicle was within the limit of danger that reasonable minds could not differ thereon." As we view the evidence, the exception has no application herein.

In the light in which we are required to view the evidence herein, it is apparent that the plaintiff had entered the intersection at a time when the defendant's car was still north of the intersection and at a time when the defendant should have seen the approach of the plaintiff. The plaintiff had proceeded at least 10 feet into the intersection before he was struck by the left front of the defendant's car, and the only disinterested witness said plaintiff was walking normally. There was a skid mark behind the car 32 feet in length. The car was 20 feet in length, and it did not stop until after it had completely crossed the crosswalk plaintiff was using, so that the rear end of the car was approximately even with the north side of the crosswalk. The plaintiff was propelled 10 feet in front of the car and was found in the street. There was no estimate of speed other than that of the defendant that he was driving 20 or 25 miles an hour. The plaintiff's testimony that defendant's car came so fast that plaintiff "could not do anything," and the physical facts, could readily indicate a speed in excess of that figure. Assuming, however, defendant was traveling 20 miles an hour, he would be traveling approximately 30 feet a second. In the time it took plaintiff to reach the center of the intersection, the jury could find the car would travel a minimum of 100 feet. This would place the car well out of the intersection and out of the limit of danger when plaintiff left the curb.

If the plaintiff had looked to the north after he left the curb, he undoubtedly would have seen the defendant's car approaching. This, however, would not have

changed the situation because even if he had seen the defendant's car, he could have assumed that defendant would respect his right-of-way until there was something to indicate otherwise. The trial court concluded that any negligence on the part of the plaintiff was not of that comparative degree which, as a matter of law, would defeat his recovery, and submitted the issue of contributory negligence to the jury under proper instructions. Defendant could expect no more. As we view the evidence, at most it could only raise a question as to the degree of plaintiff's contributory negligence, if any.

Defendant argues that there was no evidence that he could have stopped before the collision or have turned out to avoid it. As we view the record, plaintiff had the right-of-way. It was the defendant's duty to respect that right-of-way. Defendant suggests in his brief that the reason he did not see the plaintiff was that the plaintiff came up from the side and was not directly in front of the defendant's automobile. We fail to see how this can possibly excuse him. Any pedestrian using a crosswalk will come from the side unless he stands in the path of the approaching car. Defendant contends that his headlights were clear and cast a beam for several hundred feet, although there is evidence from which the jury might have believed otherwise. In any event, the headlights on defendant's automobile should have lighted the entire intersection as he approached, and should have included the sidewalk and the curb. The driver of a car approaching from the direction toward which the defendant was driving observed the plaintiff step off the curb when his own car was at least 100 feet away from the crosswalk.

It is the defendant's contention that the plaintiff was hurrying through the intersection and leaped into the path of his car. Defendant also argues that plaintiff did not leave the curb until defendant reached the intersection and at a time when the defendant's car was not more than 35 feet away from the crosswalk. The

jury did not see fit to accept the defendant's evidence. If, as the evidence of plaintiff and the disinterested witness would indicate, the plaintiff was walking normally through the intersection, it would have been impossible under the physical facts for the accident to have happened if the defendant was 35 feet from the crosswalk when the plaintiff stepped off the curb.

The defendant is a man 70 years of age. The record indicates that he had some eye difficulty involving the removal of cataracts, and that he was required to wear contact lenses. While there was no satisfactory evidence adduced which would indicate that the defendant could not see peripheral objects, that inference might be drawn from the fact that the defendant should have seen the approach of the plaintiff if he had been properly observing the intersection.

Instruction No. 2 was the trial court's résumé of the allegations of plaintiff's petition. Defendant takes particular exception to the following specifications of negligence: "2. In failing to have his automobile under reasonable control. 3. In failing to keep a proper lookout. 4. In failing to observe the plaintiff in time to stop or turn aside in order to avoid colliding with him. 5. In failing to operate his vehicle in such a manner as to be able to stop to avoid a collision with an object within the area lighted by his headlights."

The discussion heretofore clearly demonstrates that reasonable control and proper lookout were clearly within the issues to be submitted to the jury, and no further discussion is necessary.

The third specification objected to, being "4" above, had been stricken from the plaintiff's petition on motion. However, under the evidence adduced without objection, it was not an improper specification of negligence. It is the duty of the trial court to fully instruct the jury upon the theory of a party to an action if that theory finds support in the evidence. Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916.

The fourth specification, being "5" above, commonly referred to as the assured clear distance rule, which also had been stricken from the plaintiff's petition on motion, is also contested by the defendant on the theory that the plaintiff moved into the lighted area from the side and the defendant was not required to stop. Where this argument has not been answered by the observations on right-of-way, it will be covered in the discussion on instructions Nos. 10 and 11.

Instruction No. 5 was the burden of proof instruction. Defendant's objection goes to the fact that two specifications of negligence given in instruction No. 2, and referred to above, had previously been stricken from the petition on motion. There was evidence adduced to support the specifications given. Their inclusion in the instructions could not constitute prejudicial error. We find no merit in the defendant's contention.

Instruction No. 10 covered reasonable control and proper lookout, and included the following: "The driver of a motor vehicle must keep such a lookout in the direction of travel that he can see a person or vehicle as soon as it is illuminated by his headlights and it is his duty to have his automobile under such control, under the driving conditions existing, that he can stop it in time to avoid a collision with any object in the area lighted by his headlights."

Under the provisions of section 39-780, R. R. S. 1943, the defendant's headlights should have lighted the area of the intersection when he was 200 feet north of it. This would be immediately after he turned into Fifty-second Street. Under the physical facts herein, the point where the impact occurred in the intersection, and the fact that the defendant was traveling a minimum of 20 to 25 miles an hour, the plaintiff could have been in the intersection when the defendant was at least 100 feet north of the crosswalk, unless the defendant's version that the plaintiff was leaping or hurrying through the intersection is accepted as true. Instruction No. 10

was a proper instruction under the evidence adduced in this case.

Defendant objects to the following portion of instruction No. 11: " 'The headlamps of motor vehicles shall be so constructed, arranged and adjusted that * * * they will under normal atmospheric conditions and on a level road, produce a driving light sufficient to render clearly discernible a person two hundred feet ahead, but shall not project a glaring or dazzling light to persons in front of such headlamp.' " This is the applicable portion of section 39-780, R. R. S. 1943.

Defendant argues that there was no evidence that his headlights were in any way defective or contributed in any way to the occurrence of the accident. There was testimony his lights were foggy, whatever that implies. The law requires a driving light sufficient to render a pedestrian 200 feet away clearly discernible. It was the defendant's testimony that his lights were clear and cast a beam for several hundred feet. That being the situation, we must assume that he could see a person in or near the crosswalk when he was 200 feet back. Under the evidence adduced, a question was clearly presented whether defendant should have seen the plaintiff before he entered the intersection.

The defendant argues the plaintiff approached at a right angle to the path of travel of his automobile. This does not change the situation. The jury could properly find that the defendant's failure to make proper observation was the proximate cause of the accident.

It is apparent that the jury did not accept defendant's version that the plaintiff was hurrying or leaping through the intersection. Consequently, this is not a case where a plaintiff suddenly moves into the path of a vehicle followed by almost instantaneous collision. It is equally evident that the jury could reasonably have determined that the plaintiff was at the curb or entering the intersection at the time defendant was at least 100 feet north, depending on the speed of his car. Instruction No. 11

was proper under the facts in this case. We do not agree that this instruction placed an unfair burden on the defendant.

We find no errors in any of the instructions complained of, and, viewing the instructions as a whole, conclude they properly covered the issues and the evidence adduced herein.

For the reasons given, we find no error prejudicial to the defendant in the manner in which the issues were submitted to the jury, and find that the motion for a new trial or for a judgment notwithstanding the verdict was properly overruled. The judgment herein should be and hereby is affirmed.

AFFIRMED.