Larry Francis WEIR, Appellant,

v.

H. A. SIMMONS, First True and Real Name Unknown, Appellee.

No. 17980.

United States Court of Appeals Eighth Circuit.

March 9, 1966.

See also, D.C., 233 F.Supp. 657.

Richard J. Bruckner, of Schrempp, Lathrop & Rosenthal, Omaha, Neb., Henry C. Rosenthal, Jr., and David S. Lathrop, of Schrempp, Lathrop & Rosenthal, Omaha, Neb., for appellant.

Howard E. Tracy, of Luebs, Elson, Tracy & Huebner, Grand Island, Neb., Richard A. Huebner, of Luebs, Elson, Tracy & Huebner, Grand Island, Neb., for appellee.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Plaintiff, Larry Francis Weir, brought this action for damages against defendant, H. A. Simmons, for personal injuries received in a collision between plaintiff's motorcycle and defendant's tractor-trailer near Heartwell, Nebraska.

Plaintiff specified numerous acts of negligence, all of which were denied by defendant, who in turn pleaded contributory negligence by plaintiff.

Diversity of citizenship and the requisite amount in controversy established jurisdiction.

The case was tried to a jury which returned a verdict for defendant. Judgment was entered thereon and we affirm.

Early in its comprehensive charge to the jury, the trial court recited the allegations of negligence pleaded by each party. In the concluding paragraph of said instruction, the court explained:

"The foregoing is an extended statement of the contentions of the parties as set forth in their pleadings, and is given you to inform you as to the issues involved in these cases."

 Plaintiff now argues "that it was prejudicial error to instruct the jury on these allegations of negligence for the record is absolutely devoid of any evidence to support them." These instructions were not binding and amounted to nothing more than an explanation by the court of the respective claims of the parties. The purpose of instructions is to apprise the jury of the questions and issues involved and the applicable rules of law. Terminal R. R. Ass'n v. Howell, 165 F.2d 135, 139 (8th Cir. 1948); Coyle v. Stopak, 165 Neb. 594, 86 N. W.2d 758 (1957); Barney v. Adcock, 162 Neb. 179, 75 N.W.2d 683 (1956). We cannot conceive how these innocuous portions of the pleadings could have been in any wise prejudicial as they were justified by the evidence as hereafter will be shown, and would have been proper even if they had been binding on defendant's theory of the case, e. g., Kroeger v. Safranek, 161 Neb. 182, 72 N.W.2d 831 (1955). It is proper for a court to state the respective claims of the parties and, if there is evidence to support the proposition, each party is entitled to instructions on its theory of the case. Chicago & N. W. Ry. v. Green, 164 F.2d 55, 61 (8th Cir. 1947); Beck v. Trustin, 177 Neb. 788, 131 N.W.2d 425, 432 (1964); Gain v. Drennen, 160 Neb. 263, 266, 69 N.W.2d 916, 918 (1955); Rice v. American Protective Health & Acc. Co., 157 Neb. 256, 263–264, 59 N.W.2d 378, 383 (1953).

A brief recitation of the facts disclosed by the evidence is helpful because, in our opinion, the circumstantial evidence and proof of physical facts justified the trial court in submitting the issue of plaintiff's negligence to the jury. Both plaintiff and defendant's vehicles were traveling east on U. S. Highway 6–34 and approaching the north-south intersection with a public road leading north into Heartwell, Nebraska. The accident occurred about 8:30 a. m. April 20, 1962 on a dry, sunshiny morning. There was little vehicular traffic. Some two thousand feet west of the intersection, defendant, while traveling at a speed of approximately fifty-five miles per hour, approached a viaduct and with knowledge that he was going to turn north, or to his left, at the intersection, activated his electrical left turn signal. The edges of the two lane concrete highway were bordered by six inch drainage curbing. The intersecting road was dirt and gravel. Defendant was familiar with the curbing and to avoid damaging his tractor-trailer reduced his speed to approximately five miles per hour before leaving the highway. At no time during this approach did defendant see the plaintiff in his rear view mirror. Somewhere near the crest of the viaduct and approximately one hundred fifty feet west of the intersection, plaintiff undertook to pass defendant, and as defendant turned left and entered the gravel road leading to Heartwell the two vehicles collided.

Plaintiff admitted only that he noticed the trailer's lights as defendant applied

his brakes and reduced his speed in approaching the intersection.

Engineering maps and photographs of the existing conditions approaching and at the scene of the accident were introduced as stipulated exhibits. These disclosed, among other things, a clearly obvious highway sign warning of the intersecting road.

Within minutes after the accident, a Nebraska highway patrolman arrived at the scene. His investigation report revealed that the left turn signal on defendant's truck was still activated. A "squash" mark was found on the north curbing and pavement indicating that the motorcycle had struck the north curb forty-six feet west of the point of impact. Physical marks defined the path of the motorcycle from the point where it struck the north curbing up to the point of impact. The last eight to ten feet of this distance denoted a "feathered out mark" suggesting that the motorcycle skidded on its side into the truck. From all of the circumstantial evidence and physical facts, the jury could have properly inferred that plaintiff, from a position close behind the tractor, undertook to pass in spite of approaching the intersection, and in so doing the motorcycle first collided with the north curbing causing plaintiff to lose control and skid into the side of defendant's tractor which had partially entered the intersection. There was ample room for the motorcycle to turn left at the intersection short of striking the truck if plaintiff had been in reasonable control of his machine.

Plaintiff bases his argument primarily on the fact that aside from his testimony there was no other eyewitness evidence. There need be none as negligence is a factual issue and can as well be proven by circumstantial evidence. The Supreme Court of Nebraska, quoting from earlier authority, said in Davis v. Dennert, 162 Neb. 65, 73, 75 N.W.2d 112, 118 (1956):

> " 'Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged.' " (Citation omitted.)

See also Flory v. Holtz, 176 Neb. 531, 126 N.W.2d 686 (1964); Howell v. Robinson Iron & Metal Co., 173 Neb. 445, 113 N.W.2d 584 (1962); Coyle v. Stopak, supra.

Defendant would have us hold as a matter of law that plaintiff's testimony was not sufficient to make a prima facie case because it was manifestly untrue. Plaintiff did indeed testify at trial contrary to his pretrial deposition. His reason for changing his version of the accident was that the testimony of the highway patrolman had proved him wrong.[1]

It is only in extraordinary cases that a court is justified in disregarding sworn testimony, and it is primarily and preferably a question for the trial court's determination. The trial court here did not disregard plaintiff's testimony, and we do not reach the question because sufficient evidence was adduced making a proper basis for the jury's verdict.

> "Q. And so you have now taken another version of the accident because of what you heard the patrolman say? A. Yes, sir.
>
> \* \* \* \* \*
>
> "Q. You have changed them because of what you heard the patrolman say? A. I have changed them because the patrolman showed me that I was wrong, sir.
>
> "Q. And so your version is now different because you have been proven wrong; is that right? A. Yes, sir."

1. The following testimony resulted from an inquiry of plaintiff's speed at the time defendant began his left-hand turn:

"Q. Do you mean, sir, that that answer is not true now? A. Sir, there has been some testimony from the patrolman, from some statements that in the definition that I gave that I can see that I was wrong.

"Q. And you have changed your testimony because you heard the testimony of the patrolman; is that what you mean? A. Because the patrolman proved that I was wrong.

■ Plaintiff next complains of the court's usage of the word "proper", rather than "reasonable," when expressing defendant's contention that plaintiff "failed to keep his motorcycle under *proper* control in that he failed to keep it upright on its wheels." (Emphasis ours.) We note that in Instruction No. 17 when the court specifically instructed on the law of the case the jury was admonished that the driver of a motor vehicle should have such vehicle under *reasonable* control.[2] There was no error, but even so plaintiff did not object to this language at trial and he cannot effectively do so here for the first time. Fed.R.Civ.P. 51.

■ Plaintiff also objects to the giving of part of Instruction No. 18.[3] This instruction applied to both vehicles. It was general in nature, and when read in context with Instruction No. 17 could not have misled or confused the jury with respect to the degree of control necessary under the circumstances. Again, plain-

tiff failed to make proper objection at trial and again Rule 51 precludes him from raising it here.

■ The trial court gave thirty-nine instructions. We have carefully considered all of them. They fully, fairly and properly charge the jury on all aspects of the case. As a reviewing court, we must consider them as a whole and have done so and find no error. Jiffy Markets, Inc. v. Vogel, 340 F.2d 495 (8th Cir. 1965); Dun & Bradstreet, Inc. v. Nicklaus, 340 F.2d 882 (8th Cir. 1965), cert. denied, 382 U.S. 825, 86 S.Ct. 57, 15 L.Ed.2d 70 (1965); Hiner v. Nelson, 174 Neb. 725, 119 N.W.2d 288 (1963).

■ Finally, plaintiff submits that the court erred in permitting defendant to describe the turn signals on his truck. It is claimed that no foundation was laid that the signals were of the type approved by the Nebraska Motor Vehicle Department.[4]

2. Instruction No. 17:
"A driver of a motor vehicle should have said vehicle under such *reasonable* control as will enable such driver to avoid collision with other vehicles, assuming that the drivers of other vehicles exercise due care. *Reasonable* control by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence upon the highways in the exercise of due care; but complete control such as will only prevent a collision by anticipation of negligence or illegal disregard of traffic regulations, in the absence of notice, warning or knowledge, is not required by the laws of Nebraska." (Emphasis ours.)

3. Instruction No. 18:
"Now you are instructed that the driver of a leading automobile and the operator of a vehicle following have reciprocal duties. Each must exercise due care, must keep his vehicle under reasonable control, must drive at a speed which is reasonable and proper under the circumstances and must give due regard to the rights of others, and in general must so operate his vehicle as to avoid unnecessary collision with the other. The driver of a leading automobile has no absolute legal right superior to the driver of the vehicle following. The leading driver

must exercise due care not to turn, slow up or stop without adequate warning of his intention to do so to the driver of the vehicle following. You are instructed that the driver of the vehicle following must exercise reasonable care, likewise, in the control of his vehicle. The driver of the vehicle following must exercise ordinary care as herein defined by watching for signals given by the driver ahead indicating an intention to turn from a direct course and to take such action in event of movement upon the part of the vehicle ahead as a reasonably prudent person would do under the circumstances and conditions then existing."

4. Neb.Rev.Stat. § 39–7,116 (Reissue 1960) provides:
"The signals required by sections 39–7,111 and 39–7,115 shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the Department of Motor Vehicles. When a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle the signals must be given by such a lamp or device. It shall be unlawful to operate on any public street or highway in this state, any motor vehicle having four or more wheels manufactured or assembled after January 1, 1954, designed or used for the pur-

Defendant described his turn signal as an electric type operated by a small lever below the steering wheel that activated the signals to flash and that said signal device was the same as would be found on trucks of "that nature" and approved by the Motor Vehicle Department. Additionally, he testified that the truck was purchased new in 1960, some six years after the passage of the Nebraska statute requiring this type signal.[5]

■ At the time of the objection, the court advised plaintiff that he would be permitted to rebut defendant's evidence that the signal device was of the type approved by the Motor Vehicle Department. Whether the signal device did or did not comply with the Nebraska statute is irrelevant as to the admissibility of defendant's testimony describing the device. It was not incumbent upon defendant to prove anything more, and if plaintiff felt the device was not of the type approved by the Motor Vehicle Department, he was perfectly free to offer such evidence.

The trial court did not specifically inform the jury of the type signals authorized or required by Nebraska statute, but undoubtedly would have done so had plaintiff desired it. Both plaintiff's objection at trial and motion for new trial went only to the admissibility of the evidence and were properly overruled.

We have carefully canvassed the entire record and find it free of prejudicial error. The judgment is affirmed.

---

pose of carrying passengers or freight, unless such vehicle is equipped with the automatic turn signals in workable order."

5. "Q. Did you have turn signals on your vehicle? A. I did have.

"Q. What type of turn signal were they? A. Electric.

"Q. And how were they operated? A. They are operated by a small lever which is below the steering wheel.

"Q. And when you turn that lever what happens? A. The turn signals would start flashing.

"Q. And where would they flash? A. There is one on the——on each front fender of the tractor and one at——on each corner of the rear of the trailer.

"Q. Was there anything unusual about your turn signals, or were they of the same standard type that one finds on trucks of this type generally? A. They are the same as will be found on trucks of that nature.

"Q. And they are approved by the highway department, aren't they? A. They are.

"Mr. Rosenthal: I would object, Your Honor, to that because there is no proper foundation that he knows what type has been approved, nor has there been any evidence of the type that has been approved for his vehicle.

"The Court: Let's find out when he bought the truck. I think that may cover it. It had to be on all trucks sold after 1954, wasn't it, some date in January?

"Mr. Rosenthal: The important thing is, Your Honor, they have to be approved by the State.

"The Court: Yes, but if the truck was purchased on the open market after that time I think I will not require any further proof. We will see what the answer is.

"Q. When did you purchase this truck? A. The truck was purchased new in 1960.

"The Court: Now I think I will let the answer stand, and if you have any evidence that they were not proper on rebuttal you can put it in."